[No. 71533-5.   En Banc.]
Argued May 14, 2002.    Decided July 25, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. JUSTIN WILLIAM WATSON, *Petitioner*.

*David B. Koch* (of *Nielsen, Broman & Koch, P.L.L.C.*), for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Ann M. Summers, Andrea M. Vitalich*, and *Stephen P. Hobbs, Deputies*, for respondent.

SMITH, J. — Petitioner Justin William Watson, a juvenile, seeks review of a decision of the Court of Appeals, Division One, which reversed two orders of the King County Superior Court, Juvenile Division, granting consecutive deferred dispositions on a charge of taking a motor vehicle without permission of the owner in the first case and a charge of fourth degree assault in the second case.[1] We affirm.

## QUESTION PRESENTED

The sole question in this case is whether under RCW 13.40.127 a juvenile court judge may defer disposition in two separately charged cases against a juvenile defendant arising out of conduct committed on different dates and involving different subject matter.

## STATEMENT OF FACTS

On December 21, 1999 Petitioner, a juvenile born February 19, 1982, was charged by information in the King County Superior Court, Juvenile Division, with assault in the fourth degree in violation of RCW 9A.36.041 for inten-

[1] *State v. Watson*, 107 Wn. App. 540, 27 P.3d 249 (2001).

tionally assaulting his sister, Kelly Fassett, on October 23, 1999.[2] On January 13, 2000 the State filed a second information under a different cause number charging Petitioner with taking a motor vehicle without permission of the owner, Howard Dowell, between November 25 and 26, 1999 in violation of RCW 9A.56.070.[3] Both cases were initially filed and later appealed separately by the State, but were consolidated by the Court of Appeals. The State submitted two sets of clerk's papers with parallel contents and numbering.

Before commencement of trial, Petitioner filed a motion for deferred disposition in both cases[4] pursuant to former RCW 13.40.127 (1997). A hearing was scheduled for March 3, 2000. On the day of the hearing, Petitioner signed only one "Statement of Juvenile on Submittal or Stipulation to Facts for Deferred Disposition," which referred to the cause numbers in both cases and both offenses.[5] In his signed statement, Petitioner acknowledged that if he did not comply with all the terms of community supervision imposed by the trial court, the judge could revoke the deferred disposition and impose against him any sentence authorized by law.[6]

During the hearing, defense counsel argued that the trial court should consider only one disposition because Petitioner would be subject to separate dispositions on both charged offenses if he violated any of the conditions of the deferred disposition.[7] The State opposed consecutive deferred dispositions in the two cases. It was agreed that Petitioner had not previously received a deferred disposi-

---

[2] Clerk's Papers, Cause No. 99-8-05848-0, at 1.

[3] Clerk's Papers, Cause No. 99-8-06728-4, at 1.

[4] Clerk's Papers (both cases) at 6-7.

[5] *Id.* at 8-9.

[6] *Id.* at 9.

[7] Report of Proceedings at 3-4.

tion or deferred adjudication.[8]

Over the State's objections, the trial court, the Honorable Dean S. Lum, deferred disposition in each of the two cases, ruling that Petitioner was eligible for deferred dispositions because, as of the hearing date, he did not have a prior deferred disposition.[9] The court stated:

> I think the statute would allow for a respondent to be eligible for a deferred disposition so long as he does not have a prior deferred disposition. And it's pretty clear that he does not have a prior disposition at this time. So really the inquiry is not whether the Respondent is eligible but whether the Court is going to exercise discretion in giving it to him. I can imagine a scenario in which I wouldn't do it, for instance, if he had four pending matters. I probably wouldn't give it to him if he had three pending matters.[10]

The court then issued two separate deferred disposition orders, bearing separate cause numbers, with different conditions as to each charge, the sentences to run consecutively.[11] In each case the court entered a finding adjudging Petitioner "guilty" of the charged offense based upon the stipulated facts. The first order, involving the taking of a motor vehicle offense, was continued for six months until September 3, 2000 and required Petitioner to comply with certain specified conditions, including community supervision for six months, 24 hours of community service, no unwanted contact with Howard Dowell, counseling, regular school attendance, a curfew, an approved residence, no alcohol or drugs, and no weapons. The second order, involving the assault offense, "to be served consecutive to 99-8-06728-4" was continued from September 3, 2000 to March 3, 2001 and included behavior requirements similar to those in the first order (except community service and no contact) and community supervision for six months.

---

[8] *Id.* at 2.

[9] *Id.* at 5.

[10] *Id.* at 5-6.

[11] Clerk's Papers (both cases) at 3-5.

952

The State appealed to the Court of Appeals, Division One, arguing that the trial court violated the prohibition under former RCW 13.40.127(1)(c) against deferred disposition of charges for persons who had "a prior disposition or deferred adjudication." The State contended that because Petitioner had committed two unrelated criminal acts on different dates which had been charged in separate informations, the trial court could defer disposition in only one of the two cases. The State asserted that on the date the first order on deferred disposition was signed, Petitioner then had a "prior deferred disposition" and became ineligible for the second deferred disposition granted by the court.

The Court of Appeals, in a majority opinion, the Honorable William W. Baker writing, agreed with the State and reversed the trial court, holding that former RCW 13-.40.127 is unambiguous and under subsection (1)(c) "[a] juvenile is eligible for deferred disposition" unless the juvenile "[h]as a prior disposition or deferred adjudication," and because two different orders on deferred disposition were filed, once the first order was signed, Petitioner had a "prior deferred disposition" and was ineligible for the second deferred disposition granted by the trial court.

## DISCUSSION

### JUVENILE JUSTICE ACT

Under the Juvenile Justice Act of 1977, chapter 13.40 RCW, a juvenile court has discretion under certain circumstances to defer disposition of an offender's conviction.[12] The deferred disposition statute, RCW 13.40.127(9), provides juvenile offenders with an opportunity to earn vacation and dismissal of a case with prejudice upon full compliance with "conditions of supervision and payment of full restitution." This meets "the needs of the juvenile" and

---

[12] RCW 13.40.127.

the "rehabilitative and accountability goals" of the Juvenile Justice Act.[13]

Under this sentencing alternative, before the trial judge enters a finding or accepts a plea of "guilty," an offender must "[s]tipulate to the admissibility of the facts contained in the written police report; [a]cknowledge that the report will be entered and used to support a finding of guilt and to impose a disposition if the juvenile fails to comply with terms of supervision; and [w]aive" the juvenile's right to speedy disposition and to call and confront witnesses.[14] "Following the stipulation, acknowledgment, waiver, and entry of a finding or plea of guilt," the court may then defer entry of an order of disposition of the juvenile for up to one year from the date the offender is found "guilty," during which time the juvenile must comply with all court-ordered conditions of supervision.[15]

After the period set forth in the order of deferral has expired and the trial court finds the offender has complied with the conditions of supervision and paid full restitution, if applicable, the court shall then vacate the conviction and dismiss the case with prejudice.[16] If, however, the trial court finds the offender failed to comply with the court-ordered conditions, the court shall then enter an order of disposition.[17]

Not all juvenile offenders are eligible for a deferred disposition. Former RCW 13.40.127(1) provided that:

(1) A juvenile is eligible for deferred disposition *unless* [the juvenile]:

(a) Is charged with a sex or violent offense;

(b) Has a criminal history which includes any felony;

---

[13] *State v. J.H.*, 96 Wn. App. 167, 181, 978 P.2d 1121, *review denied*, 139 Wn.2d 1014, 994 P.2d 849 (1999).

[14] RCW 13.40.127(3)(a), (b), (c).

[15] RCW 13.40.127(2), (4).

[16] RCW 13.40.127(9).

[17] RCW 13.40.127(7).

(c) Has a *prior deferred disposition* or *deferred adjudication*; or

(d) Has two or more diversions.[18]

(Emphasis added.)

Petitioner argues that the Court of Appeals misinterpreted the provisions of RCW 13.40.127 when it concluded the trial court could not grant two consecutive deferred dispositions in his cases. He urges this court to interpret "prior deferred disposition" as one which occurred on a date prior to the disposition hearing. He argues that where a juvenile offender has not received a deferred disposition prior to the disposition hearing, the trial court has discretion to grant deferred disposition on all current offenses regardless whether the State chose to charge separately and under one or more cause numbers.

## Statutory Interpretation

■■ Statutory interpretation is a question of law that we review de novo.[19] In interpreting statutory provisions, the primary objective is to ascertain and give effect to the intent and purpose of the Legislature in creating the statute.[20] To determine legislative intent, we look first to the language of the statute. If a statute is clear on its face, its meaning is to be derived from the plain language of the statute alone.[21] Legislative definitions included in the statute are controlling,[22] but in the absence of a statutory definition this court will give the term its plain and ordinary meaning ascertained from a standard dictionary.[23] A

[18] Subsection (d) was amended in 2001 to read "Has two or more adjudications." LAWS OF 2001, ch. 175, § 3. The amendment is not material to this case.

[19] *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001).

[20] *State v. Sullivan*, 143 Wn.2d 162, 174-75, 19 P.3d 1012 (2001).

[21] *Keller*, 143 Wn.2d at 276.

[22] *Sullivan*, 143 Wn.2d at 175.

[23] *Id.*; *see, e.g., Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001) (stating that words are not to be given their ordinary meaning when a

statute is unclear if it can be reasonably interpreted in more than one way. However, it is not ambiguous simply because different interpretations are conceivable.[24] We are not " 'obliged to discern any ambiguity by imagining a variety of alternative interpretations.' "[25]

We have consistently held that an unambiguous statute is not subject to judicial construction[26] and have declined to insert words into a statute where the language, taken as a whole, is clear and unambiguous. We will not add to or subtract from the clear language of a statute even if we believe the Legislature intended something else but did not adequately express it[27] unless the addition or subtraction of language is imperatively required to make the statute rational.[28] We will " 'avoid a literal reading of a statute if it would result in unlikely, absurd, or strained consequences.' "[29]

If a statute is ambiguous, this court will resort to principles of statutory construction, legislative history, and relevant case law to assist in interpreting it.[30] We must construe an ambiguous statute to effectuate the intent of the Legislature.[31] In construing an ambiguous statute,

---

contrary intent is manifest, for example, when a statute expressly expands the "ordinary dictionary meaning" of a term and "[t]hat definitional expansion clearly removes the term from its arguably more common usage.").

[24] *Keller*, 143 Wn.2d at 276.

[25] *Id.* at 276-77 (quoting *W. Telepage, Inc. v. City of Tacoma.*, 140 Wn.2d 599, 608, 998 P.2d 884 (2000)).

[26] *Keller*, 143 Wn.2d at 276.

[27] *Wash. State Coalition for the Homeless v. Dep't of Soc. & Health Servs.*, 133 Wn.2d 894, 904, 949 P.2d 1291 (1997).

[28] *Sullivan*, 143 Wn.2d at 175 (citing *State v. Taylor*, 97 Wn.2d 724, 728, 649 P.2d 633 (1982)).

[29] *State ex rel. Royal v. Bd. of Yakima County Comm'rs*, 123 Wn.2d 451, 462, 869 P.2d 56 (1994) (quoting *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992)).

[30] *Cockle*, 142 Wn.2d at 808.

[31] *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999).

courts may not read into it matters that are not in it[32] and may not create legislation under the guise of interpreting a statute.[33]

■ On its face, former RCW 13.40.127(1) is not ambiguous. There is no need for judicial interpretation beyond its plain language. Although the term "prior disposition" is not defined in the statute, this court may resort to dictionary definitions, if necessary, to ascertain the term's plain and ordinary meaning.[34] "Prior" means earlier in time or order[35] and is commonly understood to mean "before" and "previously."

■ The Court of Appeals correctly interpreted former RCW 13.40.127(1). During Petitioner's sentencing, the trial court signed two separate orders that addressed separately filed charges arising from Petitioner's conduct occurring on different dates and involving different subject matter. Under the plain language of the statute, Petitioner had a "prior deferred disposition" as soon as the trial court granted an order deferring disposition in the first case. Once that order was signed, Petitioner was ineligible for a second deferred disposition. This interpretation of the statute does not result in unlikely, absurd, or strained consequences and is not contradicted by other language in the same act. The trial judge had authority to grant Petitioner only one deferred disposition.

Petitioner argues that a juvenile offender should be eligible for consecutive deferred dispositions in order to avoid prosecutorial abuse. He contends that if a juvenile is entitled to deferred disposition in only one of several cases, a prosecutor could simply file each charged offense under a separate cause number and thus thwart the juvenile's

---

[32] *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 114 Wn.2d 677, 688, 790 P.2d 604 (1990).

[33] *Associated Gen. Contractors of Wash. v. King County*, 124 Wn.2d 855, 865, 881 P.2d 996 (1994).

[34] *Sullivan*, 143 Wn.2d at 175.

[35] Webster's Third New International Dictionary 1804 (3d ed. 1993).

ability to take advantage of the deferred disposition sentencing alternative. He claims this is an absurd result which directly contravenes the rehabilitative goals of the Juvenile Justice Act.

■ The State responds that this argument ignores the requirement of mandatory joinder under Criminal Rule (CrR) 4.3.1,[36] which prohibits the State from engaging in the conduct envisioned by Petitioner. Under the mandatory joinder rule, two or more offenses must be joined if they are related. Offenses are related if they are within the jurisdiction and venue of the same court and are based on the same conduct.[37] "Same conduct" is conduct involving a single criminal incident or episode.[38] The two charges in this case are not based upon the same criminal incident or episode and are thus not subject to the mandatory joinder rule.

■ In this case, Petitioner was charged with two separate offenses which were not subject to mandatory joinder. Nor were they appropriate for permissive joinder under CrR 4.3(a)(1) and (2). Petitioner's offenses were committed a month apart and involved different courses of conduct and different subject matter.

## SUMMARY AND CONCLUSIONS

The sole question in this case is whether under RCW 13.40.127 a juvenile court judge may defer disposition in two separately charged cases against a juvenile defendant arising out of conduct committed on different dates and involving different subject matter. Our answer to the question is "no."

Under RCW 13.40.127(1)(c) a juvenile is eligible for deferred disposition unless the juvenile "[h]as a prior disposition or deferred adjudication." On its face, RCW 13.40.127(1) is not ambiguous. There is no need for judicial

---

[36] *See also* Juvenile Court Rule 7.9(a).

[37] CrR 4.3.1(b)(1).

[38] *State v. Lee*, 132 Wn.2d 498, 503, 939 P.2d 1223 (1997).

interpretation beyond its plain language. Although the term "prior disposition" is not defined in the statute, this court may resort to dictionary definitions, if necessary, to ascertain the term's plain and ordinary meaning. "Prior" means earlier in time or order and is commonly understood to mean "before" and "previously."

The Court of Appeals correctly interpreted former RCW 13.40.127(1). During Petitioner's sentencing, the trial court issued two separate orders that addressed separately filed charges arising from Petitioner's conduct occurring on different dates and involving different subject matter. Under the plain language of the statute, Petitioner had a "prior deferred disposition" as soon as the trial court granted deferred disposition on the first order. Once that order was signed, Petitioner was ineligible for a second deferred disposition. The trial judge had authority to grant Petitioner only one deferred disposition.

We affirm the Court of Appeals, Division One, which reversed two orders of the King County Superior Court, Juvenile Division, granting consecutive deferred dispositions on a charge of taking a motor vehicle without permission of the owner in one case and on a charge of fourth-degree assault in the other case.

ALEXANDER, C.J., and IRELAND, BRIDGE, and OWENS, JJ., concur.

CHAMBERS, J. (dissenting) — I respectfully dissent. The majority holding ignores the rehabilitative goal of the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, and favors form over substance. Clearly, the Legislature intended that restitution be balanced with rehabilitation and that deferral should be ordered when a child first enters the juvenile justice system. Every child deserves a chance at redemption within the sound discretionary power of the juvenile court.

Under the JJA,[39] a court may grant a deferred disposition if the defendant has no prior dispositions or deferred adjudications. RCW 13.40.127. Once a deferred disposition is granted, the child is found guilty upon stipulated facts and sentencing is postponed, placing the child on a kind of probationary status. *Id.* During this interim period, the child must comply with court ordered conditions of supervision and restitution. *Id.* A child who complies with the court's conditions earns dismissal of the case and a clear record. RCW 13.40.127(9). Failure to comply with any conditions results in a revocation of the deferral and the court enters an order of disposition. RCW 13.40.127(7). Although offender accountability is a goal of the JJA, its primary principles are rehabilitation and meeting the needs of the juvenile. *State v. J.H.*, 96 Wn. App. 167, 180-81, 978 P.2d 1121, *review denied*, 139 Wn.2d 1014, 994 P.2d 849 (1999), *cert. denied*, 529 U.S. 1130 (2000).

Clearly, Justin Watson, a child with no prior criminal record, was an apt candidate for the deferred disposition program.[40] In juvenile court, he filed a single motion for deferred disposition of both counts. *State v. Watson*, 107 Wn. App. 540, 542, 27 P.3d 249 (2001). The State agreed that Watson had no prior deferred dispositions or deferred adjudications, and the trial court ruled he was eligible because he had no prior dispositions at that time. Instead of following the logical and fair decision of the trial court, the majority seizes on the filing method of the court: separate orders for deferral were filed for each charge, and the two

---

[39] In 1997, chapter 13.40 RCW of the JJA was amended, adding the deferred disposition sentencing alternative. *See* RCW 13.40.127.

[40] The trial court remarked regarding Watson's eligibility:

I think the statute would allow for a respondent to be eligible for a deferred disposition so long as he does not have a prior deferred disposition. And it's pretty clear that he does not have a prior disposition at this time. So really the inquiry is not whether the Respondent is eligible but whether the Court is going to exercise discretion in giving it to him.

I can imagine a scenario in which I wouldn't do it, for instance, if he had four pending matters. I probably wouldn't give it to him if he had three pending matters.

Report of Proceedings 5-6.

supervision periods were to run consecutively. The majority holds that a deferred disposition existed as soon as one of the orders was signed, ignoring the fact that Watson signed a single "Statement of Juvenile on Submittal or Stipulation to Facts for Deferred Disposition" and acknowledged that failure to comply with the conditions of the deferred disposition could result in its complete revocation.

The plain meaning of "prior" is "earlier in time or order," but this definition offers but sparse legal insight here, where two charges were presented to the trial judge simultaneously. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1804 (3d ed. 1993). Although the majority is correct in noting that a child may receive only one deferred disposition, its application of the statute is flawed. Indeed, the majority relies on the plain meaning of "prior" in order to prevent juveniles from circumventing the limitation of the JJA, but in doing so, it defeats the long-standing goal of the JJA: rehabilitation of the juvenile.[41] Juvenile restitution is a remedial matter, not punitive, unlike the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *J.H.*, 96 Wn. App. at 182. Therefore, we must dig deeper to fully understand the function of this word.

The majority's interpretation of the word "prior" wrongly disregards other instances of use by the Legislature, and it fails to comport with the purpose of the JJA. A statute is ambiguous if it can be reasonably interpreted in two or more ways. *State v. McGee*, 122 Wn.2d 783, 787, 864 P.2d 912 (1993). On appeal, Watson correctly argued that the phrase "prior deferred disposition" means a disposition prior to the hearing on the current charges. However, the

---

[41] The JJA "attempts to tread an equatorial line somewhere midway between the poles of rehabilitation and retribution. The adult sentencing system, on the other hand, does not place such importance on rehabilitation." *State v. Rice*, 98 Wn.2d 384, 393, 655 P.2d 1145 (1982). Further, "[a]lthough the JJA seeks a balance between the poles of rehabilitation and retribution, the purposes of accountability and punishment are tempered by and at times must give way to the purposes of responding to the needs of the juvenile." *State v. J.A.*, 105 Wn. App. 879, 886, 20 P.3d 487 (2001) (citing *State v. T.C.*, 99 Wn. App. 701, 707, 995 P.2d 98 (2000)). Although these cases determined the extent of the juvenile court's discretion to revoke a deferred disposition rather than the definition of the word "prior," this difference does not impair their relevance here.

.

majority interprets the same phrase to mean that each charge before the sentencing court is viewed separately. Therefore, a deferred disposition is created as soon as the court signs the order of deferral.

Given the rehabilitative intent of the JJA, Watson's interpretation is clearly reasonable. His interpretation limits deferred dispositions to those who have no prior record, but it still allows a child who was involved in two incidents, within a relatively close time of each other, to earn a clean record. In this case, Watson has not yet had the chance to earn the dismissal afforded by the JJA, but the majority prevents the trial court from even considering the grant. If each of the two interpretations is reasonable, then the statute is ambiguous, and the court should look to the Legislature's past uses of the language in other, similar contexts. *State v. Akin*, 77 Wn. App. 575, 580-81, 892 P.2d 774 (1995) (citing *DeGrief v. City of Seattle*, 50 Wn.2d 1, 11, 297 P.2d 940 (1956)).[42]

Under the SRA, "[a] prior conviction is a conviction which exists before the date of sentencing for the offense." RCW 9.94A.525(1). Given this language, there is no reason to believe that the Legislature intended some alternate meaning when using the phrase "prior deferred disposition." Therefore, a prior deferred disposition is that which exists before the date of disposition of the current charges. This interpretation is consistent with the goal of the JJA: a court may grant a deferred disposition to juvenile offenders who have not yet had a chance to prove themselves worthy of a clean record.

Although the statute prevents a court from granting a deferred disposition where the juvenile "[h]as a criminal history which includes any felony," Watson had no criminal history prior to the charges at bar. RCW 13.40.127(1)(b). The mere fact that the trial court happened to issue two disposition orders, rather than one, should not undermine

---

[42] Although *Akin* referred to similar language within a particular statute or act, the JJA and the SRA both deal with sentencing. Therefore, the use of the word "prior" in the SRA should inform the court's interpretation of the JJA.

its discretionary power, considering that the trial court orally granted the defendant's single motion for a single deferred disposition of both charges. *Watson*, 107 Wn. App. at 544-45 (Webster, J., dissenting). The mere timing of a judge's signing hand should not preclude a child from the rehabilitative benefits of the JJA.[43]

I therefore dissent, and would reverse the Court of Appeals, reinstating the single order of deferred disposition.

JOHNSON, MADSEN, and SANDERS, JJ., concur with CHAMBERS, J.

---

[43] In oral argument, the State relied in part on the fact the disposition orders were not signed simultaneously. Instead, they were signed one after the other. An ambidextrous judge might well be able to sign both simultaneously. That peculiarity illustrates the frailty of the majority's premise that signing one deferred disposition order bars a judge from signing the other, as he might, even under the majority's reasoning, if the charges were consolidated.