199 P.3d 1038 (2009)
In the Matter of the Parentage and Support of M.K.M.R., a minor child,
State of Washington, Respondent,
v.
David R., presumed father, Appellant,
Maria R., mother; Buck G., alleged father, Respondents.
No. 61138-1-I.
Court of Appeals of Washington, Division 1.
January 20, 2009.
*1039 Paul E. Simmerly, Bellevue, WA, for Appellant.
Daniel Mitchell, Island County Prosecutor's Office, Coupeville, WA, Lianne S. Malloy, Assistant Attorney General, Olympia, WA, Philip A. Talmadge, Sidney C. Tribe, Emmelyn Hart-Biberfeld, Talmadge Law Group PLLC, Tukwila, WA, for Respondents.
Maria G. Roth, Oak Harbor, WA, pro se.
Elizbeth McKay, Freeland, WA, pro se.
ELLINGTON, J.
¶ 1 The central issue in this case is whether the State has standing to challenge paternity when there is a presumed father. The court below said no. We disagree, reverse and remand.

BACKGROUND
¶ 2 Maria R. met and married David R. when she was six months pregnant. M.K.M.R. (M.R.) was born a few months later. David[1] was present at M.R.'s birth, participated in naming the child, and is listed on the birth certificate as the father. He named M.R. as his son and beneficiary in his will and wrote a letter for M.R.'s baby book welcoming him into his family.
¶ 3 In May 2006, Maria filed an action for dissolution. David filed a declaration stating that M.R. was not his son and asked to be relieved of any parenting responsibilities. The court declined to order child support.
*1040 ¶ 4 Maria then asked the Department of Social and Health Services for assistance in obtaining child support for M.R.[2] She identified Buck G. as the only possible biological father. When M.R. was 15 months old, the Division of Child Support (DCS) filed a petition to establish Buck as M.R.'s father and obtain an order for child support. In the caption, David was named as the presumed father, but the petition contained the following entry: "Presumed Father. Does not apply."[3] David was not served with the petition. The court ordered appointment of a guardian ad litem and that David be joined as a party. The court declined to consolidate the paternity and dissolution actions.
¶ 5 Genetic testing was performed at Buck's request, which established a 99.99 percent probability that Buck is M.R.'s biological father.
¶ 6 Meanwhile, in the dissolution proceeding pending before a different judge, the court approved the parties' stipulation that issues of parentage and child support would be resolved in the paternity action.
¶ 7 After David was served in the paternity action, he responded using a standard court form, denying paternity of M.R. In the paragraph entitled "Request for Relief," he stated:
The court should grant the petition for establishment of parentage and enter respondent's parenting plan/residential schedule[,] enter an order of child support ordering the alleged father, Buck [G.] to pay child support[, e]nter a finding that Buck [G.], the alleged father, is in fact the father of this child[,] and establish a parenting plan and support order enforcing his rights as a father.[[4]]
¶ 8 Maria then moved for summary judgment establishing David as the child's legal father, arguing that David failed to challenge paternity within two years of M.R.'s birth as required by RCW 26.26.530, and that DCS lacked standing to challenge paternity at all because there was a presumed father. Buck joined in the motion.
¶ 9 The court agreed, and established David as the legal father.

DISCUSSION

Procedure on Appeal
¶ 10 David appeals, contending his responses in the dissolution proceeding and to the petition were timely challenges to paternity. DCS filed no notice of appeal and has not sought to join in David's appeal. It has, however, filed a brief urging vacation of the summary judgment order on grounds the court erred in concluding DCS has no standing. Buck objects to the brief, moves to strike under RAP 10.7, and requests sanctions.[5] DCS argues that despite its failure to file a notice of appeal, its request for relief is justified by the necessities of the case and may therefore be considered under RAP 5.3(i), which provides:
If there are multiple parties on a side of a case and fewer than all of the parties on that side of the case timely file a notice of appeal or notice for discretionary review, the appellate court will grant relief only (1) to a party who has timely filed a notice, (2) to a party who has been joined as provided in this section[,] or (3) to a party if demanded by the necessities of the case.[[6]]
The "necessities of the case" means "`an absolute necessity; that is to say, one arising from the inherent nature of the case in that *1041 no judgment rendered could, under any circumstances, be valid as to one of the parties and not as to the others.'"[7]
¶ 11 Such cases are rare, but here, the rule applies. David seeks review based in part upon the court's implicit conclusion that his request for relief in response to the parentage action was not a proper challenge to paternity. Whether that is true depends on whether DCS had standing to file the action in the first place. If so, David's challenge was timely because DCS's petition was timely. Review of the summary judgment order therefore compels review of DCS's standing. We thus consider DCS's responsive brief, including its request for relief.
¶ 12 Buck also asks us to strike David's reply brief and impose sanctions, contending it is an unauthorized surreply to his motion to strike.[8] David concedes this. But the section devoted to Buck's motion to strike is nearly identical to the brief David filed in response to the motion itself. Thus, while accepting the brief would not prejudice Buck, striking it would significantly prejudice David, who would be denied the opportunity to make his arguments in this appeal. We decline to strike David's reply brief or impose sanctions.
¶ 13 We review summary judgment decisions de novo.[9] Here, there is no issue of material fact.[10] Summary judgment is therefore appropriate if the moving party is entitled to judgment as a matter of law.[11]

Standing
¶ 14 We must discern the proper interpretation of the Washington Uniform Parentage Act, chapter 26.26 RCW (WUPA), which governs determinations of paternity. In interpreting statutes, the primary objective is to ascertain the intent of the legislature.[12] We begin with the text of the relevant sections.[13] Legislative history, principles of statutory construction, and relevant case law may provide guidance in construing the meaning of an ambiguous statute.[14] We give statutory terms the meaning naturally attaching to them and that best harmonizes with the whole.[15]
¶ 15 David is M.R.'s presumed father under RCW 26.26.116(1)(a). A presumption of paternity may be rebutted only by an adjudication under RCW 26.26.500-.630.[16] RCW 26.26.505 addresses standing for such adjudications:
Subject to RCW 26.26.300 through 26.26.375, 26.26.530, and 26.26.540, a proceeding to adjudicate parentage may be maintained by

(1) The child;
(2) The mother of the child;
(3) A man whose paternity of the child is to be adjudicated;
(4) The division of child support.[[17]]
¶ 16 The standing conferred by this section is expressly made subject to several other sections. Each of those sections imposes a statute of limitations. RCW 26.26.300 deals with acknowledgments and denials of paternity. RCW 26.26.540 concerns proceedings to adjudicate parentage where the child has an acknowledged or adjudicated father. The *1042 relevant section here is RCW 26.26.530(1), which deals with presumed fathers:
[A] proceeding brought by a presumed father, the mother, or another individual to adjudicate the parentage of a child having a presumed father must be commenced not later than two years after the birth of the child.[[18]]
¶ 17 DCS is an arm of the State. The trial court looked to the definition of "State" in WUPA, noting that it does not include an "individual person."[19] The court therefore reasoned that the reference to "other individual" in the limitations section does not include government entities, and thus operates to deprive DCS of its standing whenever there is a presumed father.
¶ 18 We do not agree with this reading of the statutes.
¶ 19 Paternity actions are time limited. RCW 26.26.530 sets the deadline for bringing a parentage action where there is a presumed father. RCW 26.26.540 sets the same two year deadline where there is an acknowledged or adjudicated father. Both sections refer to actions by individuals other than the child, mother, or presumed or adjudicated father. Neither makes any mention of standing.
¶ 20 The WUPA definition of "State" enumerates various political sovereignties: "`State' means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, any territory or insular possession subject to the jurisdiction of the United States, or an Indian tribe or band, or Alaskan native village."[20] The usage of the word elsewhere in WUPA conforms to this definition. Clearly the term is intended to refer to political jurisdictions. DCS is not a political jurisdiction.
¶ 21 It is, however, an individual. The term "individual" is not a term of art limited only to natural persons and is not defined in the WUPA.[21] It is therefore given its plain and ordinary meaning.[22] The first of five definitions found in Webster's Third New International Dictionary is "a single or particular being or thing or group of beings or things."[23] This definition would encompass a public entity such as DCS.
¶ 22 Case law is in accord. For example, in Clinton v. City of New York.[24] the United States Supreme Court considered the meaning of the word "individual" in the Line Item Veto Act,[25] which allowed any individual adversely affected by the act to demand expedited review on grounds of unconstitutionality. The Court was asked to rule whether the City of New York, health care providers, unions, a farmers' cooperative and others had standing. The Court held that Congress intended the word "individual" to include corporations because there was no plausible reason why it would preclude nonnatural persons from demanding expedited review.[26]
*1043 ¶ 23 Maria and Buck offer no plausible reason why our legislature would expressly grant standing to DCS only to take it away by implication in another section because there is a presumed father. We can see no point to such a distinction, especially given the role of DCS in securing child support from the appropriate party.
¶ 24 Buck points out that a child's best interests are sometimes better served by no paternity determination at all.[27] Buck also points out that the two year time limit recognizes that the child's best interests normally demand timely determinations of paternity.[28] However, Buck does not explain how these policies are jeopardized by allowing DCS to file a timely petition challenging the paternity of a child with a presumed father.
¶ 25 The court erred in concluding DCS lacked standing. We hold that DCS has standing to file a petition challenging paternity whether or not there is a presumed father. We reverse the court's summary judgment disposition on this ground[29] and need not reach the arguments raised by David's appeal.[30]
¶ 26 Maria's and Buck's requests for costs on appeal are denied.
¶ 27 Reversed and remanded.
WE CONCUR: SCHINDLER, C.J., and LEACH, J.
NOTES
[1] We use first names to protect the parties' privacy; no disrespect is intended.
[2] DCS alleges Maria asked for assistance establishing Buck as her son's father. Maria claims she asked for assistance obtaining child support from David.
[3] Clerk's Papers at 292.
[4] Clerk's Papers at 86.
[5] "If a party submits a brief that fails to comply with the requirements of Title 10, the appellate court ... may (1) order the brief returned for correction or replacement within a specified time, (2) order the brief stricken from the files with leave to file a new brief within a specified time, or (3) accept the brief. The appellate court will ordinarily impose sanctions on a party or counsel for a party who files a brief that fails to comply with these rules." RAP 10.7. The rule is permissive, not mandatory. See Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 28, 978 P.2d 481 (1999) (the term "may" in a statute has a discretionary meaning).
[6] RAP 5.3(i).
[7] Mon Wai v. Parks, 46 Wash.2d 138, 140, 278 P.2d 676 (1955) (emphasis omitted) (quoting Morgan v. Williams, 77 Wash. 343, 347, 137 P. 476 (1914)).
[8] Buck also argues that David's reply brief failed to cite to the record for its factual statements. This is not correct.
[9] Anderson v. State Farm Mut. Ins. Co., 101 Wash.App. 323, 329, 2 P.3d 1029 (2000).
[10] David readily concedes that he and Maria were married at the time M.R. was born and he is therefore the presumed father under RCW 26.26.116(1)(a).
[11] CR 56(c).
[12] Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 813, 828 P.2d 549 (1992).
[13] State v. Roggenkamp, 153 Wash.2d 614, 621, 106 P.3d 196 (2005).
[14] State v. Watson, 146 Wash.2d 947, 955, 51 P.3d 66 (2002).
[15] Roggenkamp, 153 Wash.2d at 623, 106 P.3d 196.
[16] RCW 26.26.116(2).
[17] (Emphasis added.)
[18] (Emphasis added.)
[19] Clerk's Papers at 17.
[20] RCW 26.26.011(19).
[21] See, e.g., BLACK'S LAW DICTIONARY 773 (6th ed.1990) (an "individual" is "a single person as distinguished from a group or class, and also, very commonly, a private or natural person as distinguished from a partnership, corporation, or association; but it is said that this restrictive signification is not necessarily inherent in the word, and that it may, in proper cases, include artificial persons"). See also BLACK'S LAW DICTIONARY 777 (7th ed. 1999); BLACK'S LAW DICTIONARY 789 (8th ed.2004) (both defining "individual" as "[e]xisting as an indivisible entity" or "of or relating to a singular person or thing; as opposed to a group").
[22] See Roggenkamp, 153 Wash.2d at 623, 106 P.3d 196.
[23] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1152 (1993).
[24] 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998).
[25] 2 U.S.C.A. § 692.
[26] Clinton, 524 U.S. at 428, 118 S.Ct. 2091. See also United States v. Middleton, 231 F.3d 1207, 1210 (9th Cir.2000) (statute that prohibits conduct causing damage to one or more individuals was intended to protect corporations using computers for interstate or foreign business and not just natural persons); Cruze v. National Psychiatric Services, Inc., 105 Cal.App.4th 48, 56, 129 Cal.Rptr.2d 65 (2003) (California mental health law providing criminal and civil immunity to individuals authorized to detain the mentally ill provides immunity to hospitals and clinics).
[27] See McDaniels v. Carlson, 108 Wash.2d 299, 310, 738 P.2d 254 (1987).
[28] See Marriage of Swanson, 88 Wash.App. 128, 145, 944 P.2d 6 P.2d 2d 6 (1997) (Seinfeld, J, dissenting).
[29] Buck G. also urges affirmance on grounds that DCS's amended complaint joining David was filed more than two years after M.R.'s birth. But under CR 15(c), "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." DCS merely joined a necessary party at the order of the court. Therefore, the amendment relates back to the date of the original pleading, which was filed within two years of M.R.'s birth. The DCS parentage action was timely.
[30] We observe, however, that in our view, the various pleadings filed by David in the dissolution and paternity actions effectively met the requirements for a challenge to paternity. Clearly the dissolution court and Maria, at least at the time of the parties' stipulation, viewed paternity as a matter timely brought to the court for determination.