267 P.3d 441 (2011)
AUDIT & ADJUSTMENT COMPANY, Respondent,
v.
Donald EARL, Appellant.
No. 40416-8-II.
Court of Appeals of Washington, Division 2.
November 29, 2011.
*442 Kimberlee Walker Olsen, Luke, Casteel & Olsen, Lynnwood, WA, for Respondent.
John Matthew Geyman, Phillips Law Group PLLC, Seattle, WA, for Amicus Curiae on behalf of Northwest Health Law Advocates and Northwest Justice Project.

PART PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 In 2006, Donald Earl received emergency medical services from Jefferson Healthcare. Audit & Adjustment Company (Audit), a collection agency, filed a debt collection action against Earl in Jefferson County District Court to collect his unpaid hospital bills. Earl argued, as an affirmative defense, that he did not owe the debt because the hospital had wrongfully denied his application for charity care under chapter 70.170 RCW. The district court entered judgment in favor of Audit, ruling that the debt was enforceable because Earl was not eligible for charity care. We granted Earl's request for discretionary review. Earl argues that (1) the district court lacked subject matter jurisdiction over charity care eligibility; (2) Audit failed to prove it had standing under RCW 19.16.260 and .270 to maintain a collection suit against him; (3) the district court erred in admitting certain documents and testimony at trial; (4) the district court erred by concluding that the net proceeds from the sale of his property constituted income under RCW 70.170.060(5) and WAC 246-453-010(17); (5) his 2005 federal income tax return alone is sufficient to establish his eligibility for charity care under WAC 246-453-030; and (6) the superior court erred under ER 201 by taking judicial notice of adjudicative facts without providing him with notice and an opportunity to be heard. Finding no reversible error, we affirm.

FACTS
¶ 2 In 2006, Jefferson Healthcare charged Earl approximately $14,000 for emergency medical services, and Earl applied for charity care under chapter 70.170 RCW. RCW 70.170.060 prohibits any Washington hospital from denying a person emergency medical care based on inability to pay. The same statute directs each hospital to develop a charity care policy and a "sliding fee schedule" to "enable people below the federal poverty level access to appropriate hospital-based medical services." RCW 70.170.060(5). The Department of Health is responsible for establishing uniform definitions and procedures for charity care policies. RCW 70.170.060(3)-(4).
¶ 3 In support of his charity care application, Earl submitted the first page of his 2005 federal income tax return, which showed a negative adjusted gross income of $2,896. He also submitted a letter explaining that he owned two pieces of property in 2005, one on which he lived and one on which he was constructing a new residence. In September 2005, he sold the property where he lived and received approximately $70,000 in net proceeds "[a]fter deducting closing costs and serv[icing] the equity line of credit, net proceeds from the sale was approximately $70,000." Ex. 32, at 3. The hospital determined that the net proceeds constituted income, rendering him ineligible for charity care.
¶ 4 The hospital subsequently assigned Earl's account to Audit. In 2008, Audit filed this debt collection action against Earl in the Jefferson County District Court. At trial, Earl produced the hospital's sliding fee scale, which states, "If you are eligible for our sliding fee, charges for your services will be discounted." Clerk's Papers (CP) at 17. Earl asserted, as an affirmative defense to the debt, that the sliding fee scale created an enforceable contract and that the hospital had wrongfully denied his application for charity care. The district court entered judgment in favor of Audit, ruling that the sliding fee scale did not create an enforceable contract and that it did not have subject matter jurisdiction to review the hospital's charity care determination.
¶ 5 Earl appealed and the superior court reversed, holding that the sliding fee scale had created an enforceable contract and that Earl's assertion that the hospital wrongfully denied his charity care application was an affirmative defense to the debt. The superior court remanded to the district court "for trial on the issue of whether Mr. Earl qualified *443 for relief under the `sliding fee scale.'" CP at 18.
¶ 6 On remand, Audit submitted the financial documents that Earl had provided to the hospital in support of his charity care application to show what information the hospital had relied on in determining his eligibility. The district court admitted the documents into evidence over Earl's objections that they were privileged and confidential. The district court ruled that the $70,000 Earl received from the sale of his property qualified as income under RCW 70.170.060(5) and WAC 246-453-010(17), and that Jefferson Healthcare properly denied Earl's charity care application based on this income.
¶ 7 Earl moved for reconsideration, arguing that the district court's determination of whether he qualified for charity care should have been based solely on his federal income tax return. After the district court denied his motion, Earl again appealed to the superior court, which affirmed the district court.

ANALYSIS

I. CHARITY CARE ELIGIBILITY
¶ 8 Earl's main contention is that the district court incorrectly interpreted the statutes and administrative regulations governing charity care eligibility.[1] First, he argues that the sale of his property does not constitute income under RCW 70.170.060(5) and WAC 246-453-010.
¶ 9 Under RCW 70.170.060(5), "[a]ll persons with family income below one hundred percent of the federal poverty standard shall be deemed charity care patients for the full amount of hospital charges...." WAC 246-453-010(17) defines "income" as "total cash receipts before taxes derived from wages and salaries, welfare payments, Social Security payments, strike benefits, unemployment or disability benefits, child support, alimony, and net earnings from business and investment activities paid to the individual." (Emphasis added.) Earl argues that the district court improperly concluded that the net proceeds from the sale of his property constituted "net earnings from ... investment activities" under WAC 246-453-010(17). He does not dispute that the sale of one property to finance construction on the other constitutes an "investment activity," but he argues that the district court improperly interpreted "net proceeds" as synonymous with "net earnings." Br. of Appellant at 18-20.
¶ 10 We review de novo a trial court's interpretation of a statute as a question of law. State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005); State v. Watson, 146 Wash.2d 947, 954, 51 P.3d 66 (2002). When interpreting a statute, we first look for the statute's "plain meaning," which we discern from the ordinary meaning of the language at issue, the context of the statute as a whole, and related statutory provisions. Jacobs, 154 Wash.2d at 600, 115 P.3d 281. Definitions included in the statute are controlling. Watson, 146 Wash.2d at 954, 51 P.3d 66. If a term is undefined, we will use a standard dictionary definition to find the term's plain and ordinary meaning. Watson, 146 Wash.2d at 954, 51 P.3d 66.
¶ 11 The provision "net earnings from ... investment activities" is not defined by statute or administrative regulation. WAC 246-453-010(17). The ordinary meaning of "earnings" is "the balance of revenue for a specific period that remains after deducting related costs and expenses incurredcompare profit." WEBSTER'S THIRD NEW INT'L DICTIONARY, at 714 (2002). "Net earnings" is equivalent to "net income" and means "the balance of gross income remaining after deducting related costs and expenses [usually] for a given period and losses allocable to the period." WEBSTER'S, supra, at 1520; see also BLACK'S LAW DICTIONARY, at 832, 1139 (9th ed. 2009). In contrast, "proceeds" means "[t]he value of land, goods, or investments when converted into money; the amount of money received from a sale." BLACK'S, supra, *444 at 1325. "Net proceeds" means "[t]he amount received in a transaction minus the costs of the transaction (such as expenses and commissions)." Black's, supra, at 1325.[2]
¶ 12 Thus, net proceeds are the total revenue realized from a transaction, such as a sale, while net earnings are the profit from a sale and therefore require deduction of, at least, the original purchase price. For example, we would calculate Earl's net proceeds from the sale by taking the sale price and deducting any fees paid to facilitate the transaction. We would calculate Earl's net earnings by deducting the original purchase price, the cost of other improvements, and the costs of sale from the net sale price. Earl is correct that "net proceeds" is not synonymous with "net earnings." And, because Earl self-reported that the $70,000 he received from the sale of his property was net proceeds, without supplying any additional information from which the hospital or district court could verify whether all or any portion of the $70,000 constituted net earnings, it is unclear whether this money qualifies as income under WAC 246-453-010(17).
¶ 13 Earl next argues that his 2005 federal income tax return alone is sufficient evidence to establish his eligibility for charity care under WAC 246-453-030. That regulation provides:
Any one of the following documents shall be considered sufficient evidence upon which to base the final determination of charity care sponsorship status, when the income information is annualized as may be appropriate:
(a) A `W-2' withholding statement;
(b) Pay stubs;
(c) An income tax return from the most recently filed calendar year;

(d) Forms approving or denying eligibility for medicaid and/or state-funded medical assistance;
(e) Forms approving or denying unemployment compensation; or
(f) Written statements from employers or welfare agencies.
WAC 246-453-030(2)(a)-(f) (emphasis added).
¶ 14 While a hospital may rely solely on an income tax return to make a charity care determination under WAC 246-453-030(2)(c), Earl did not submit a complete income tax return. An income tax return is the complete 1040 form plus all applicable attachments. The return is not valid unless it is signed, and the signature appears on the second page of the 1040 form.[3] Earl submitted only the first page of his 1040 form. And, the fact that the first page of Earl's tax return does not show a gain from the sale of his property does not mean he realized no gain from the sale of his property. As Audit argues, a taxpayer may exclude certain types of income from the gross income reported. For example, under 26 U.S.C. § 121(a):
Gross income shall not include gain from the sale or exchange of property if, during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more.
¶ 15 Earl argues, however, that the district court clearly erred by finding the $70,000 was net earnings and that this alone requires that we remand for a new trial. We disagree. The district court did initially find the $70,000 to be net earnings. But in ruling on Earl's motion to reconsider, the court noted that Earl had supplied only the first page of his income tax return. It then explained that this single page would not disclose some of the sources of income defined in WAC 246-453-010(17). Thus, the district court relied in part on Earl's failure to supply all the information pertaining to his actual income. Moreover, we can affirm a trial court's decision on any ground. Nast v. Michels, *445 107 Wash.2d 300, 308, 730 P.2d 54 (1986) (citing Reed v. Streib, 65 Wash.2d 700, 709, 399 P.2d 338 (1965)). Earl had the burden of proving his affirmative defense that he qualified for charity care under chapter 70.170 RCW. See Olpinski v. Clement, 73 Wash.2d 944, 950, 442 P.2d 260 (1968); Robertson v. Club Ephrata, 48 Wash.2d 285, 290, 293 P.2d 752 (1956); see also WAC 246-453-020(5) ("The failure of a responsible party to reasonably complete appropriate application procedures shall be sufficient grounds for the hospital to initiate collection efforts directed at the patient."). Because he submitted only the unsigned first page of his tax return and selectively submitted information about his property sale, he failed to meet his burden of proof.
¶ 16 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.
We concur: QUINN-BRINTNALL and WORSWICK, A.C.J.
NOTES
[1] Earl also argues that the district and superior courts' misinterpretation of the charity care statutes and regulations violated his right to equal protection of the laws. To establish an equal protection violation, a party must first show that a law or statute treats similarly situated classes of people differently. Fell v. Spokane Transit Auth., 128 Wash.2d 618, 635, 911 P.2d 1319 (1996). Earl does not argue that the charity care statutes treat similarly situated people differently and therefore fails to raise a valid equal protection claim.
[2] Webster's Third New International Dictionary defines "proceeds" similarly, but less straightforwardly, as "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue: the total amount brought in." Webster's, supra, at 1807. It does not define the term "net proceeds."
[3] See Department of the Treasury Internal Revenue Services, 1040 Instructions, at 72 (2010), http://www.irs.gov/pub/irs-pdf/i1040.pdf.