# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Matter of the Marriage of: | No. 48462-5-II |
| GRETCHEN RUFF, FKA WORTHLEY, | |
| Petitioner, | |
| and | |
| WILLIAM WORTHLEY, | PUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. — We are asked to determine whether the "Child Relocation Act" (CRA)[1] applies to joint parenting plans when parents share equal residential time and have equal decision-making authority.[2] Joint parenting plans that provide for equal residential time and equal decision-making create an important and serious commitment by parents to work closely together to raise their children. A proposed relocation that would modify a joint parenting plan's equal residential time to something less than equal residential time is in effect a change in residential placement. Such a change in residential placement requires an adequate cause finding under the modification

---

[1] RCW 26.09.405-.560.

[2] We granted Gretchen Ruff's motion for discretionary review under RAP 2.3(b)(4).

statute.[3] We therefore conclude that the CRA does not apply to a proposed relocation that would modify the joint parenting plan's joint and equal residential time to something other than joint and equal residential time. Accordingly, we dismiss the relocation action.

FACTS

In September 2009, William Worthley and Gretchen Ruff (formerly Gretchen Worthley) divorced. Their parenting plan allowed for their minor children to "reside equally or substantially equally with both parents" on an alternating weekly schedule (a "joint parenting plan"). Clerk's Papers (CP) at 4. The parties are designated joint legal and physical custodians of their minor children and have equal decision-making authority.

In June 2014, Worthley filed a notice of intended relocation seeking to relocate their remaining minor child to Missouri. Two different superior court judges made rulings on this case. In September, in response to Ruff's dismissal motion, the first superior court judge temporarily restrained Worthley from relocating the minor child. The first superior court judge concluded that because Worthley and Ruff had a joint parenting plan, Worthley must file a modification petition and meet the adequate cause burden before pursuing his relocation request.

Worthley then petitioned for modification, arguing adequate cause based on the child's integration into his home and Ruff's detrimental home environment. Ruff opposed the petition and argued that adequate cause did not exist to support a parenting plan modification.[4] The second

---

[3] RCW 26.09.260.

[4] At the adequate cause hearing, a superior court commissioner held that there was adequate cause for modification based solely on Worthley's proposed relocation. Ruff successfully moved to revise the commissioner's adequate cause determination.

No. 48462-5-II

superior court judge concluded that Worthley failed to show adequate cause and denied Worthley's modification petition. Turning to the relocation action, the second superior court judge further concluded that "[t]he [CRA] presumes that one parent is the primary residential parent. The court will set an evidentiary hearing to determine which parent is the primary residential parent. Thereafter, the court will decide whether the child should be allowed to relocate under the [CRA]."[5] CP at 245.

We granted Ruff's discretionary review petition on the sole issue of "whether the [CRA] applies to parenting plans that provide for children to reside equally with both parents." Ruling Granting Review, *In re Marriage of Worthley*, No. 48462-5-II, at 6 (Wash. Ct. App. Apr. 4, 2016).

## ANALYSIS

### I. THE CRA IS INAPPLICABLE TO A MODIFICATION OF THE JOINT PARENTING PLAN

Ruff makes several arguments that the CRA does not apply to joint parenting plans.[6] We hold that the CRA does not apply when the child's residential time is designated equal or substantially equal in the parenting plan and when the proposed relocation would result in a modification of this designation.[7]

---

[5] The second superior court judge certified this ruling under RAP 2.3(b)(4).

[6] Ruff makes additional arguments that fall outside the order granting discretionary review. Because discretionary review was not granted on additional issues, we do not reach them. RAP 2.3(e); *Johnson v. Recreational Equip., Inc.*, 159 Wn. App. 939, 959 n.7, 247 P.3d 18 (2011) (holding that the appellate court may specify the issue or issues as to which discretionary review is granted).

[7] The parties concede that the superior court erred when it set an evidentiary hearing to determine who the primary parent is under the CRA when the parenting plan clearly does not designate a primary custodial parent. Because we conclude that the CRA does not apply and we dismiss the relocation action, we need not decide this issue.

3

A.  PRINCIPLES OF LAW

This case involves an issue of statutory interpretation.  We review questions of statutory construction de novo.  *In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 57, 109 P.3d 405 (2005).  Our fundamental objective when interpreting a statute is "to discern and implement the intent of the legislature."  *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).  "Statutory interpretation begins with the statute's plain meaning."  *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).  We discern plain meaning from the "'ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'"  *Lake*, 169 Wn.2d at 526 (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)).  "If a statute is clear on its face, its meaning is to be derived from the plain language of the statute alone."  *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 1 (2002).  And in the absence of a statutory definition, we "will give the term its plain and ordinary meaning ascertained from a standard dictionary."  *Watson*, 146 Wn.2d at 954.

If the statute is unambiguous after a review of the plain meaning, our inquiry is at an end.  *Lake*, 169 Wn.2d at 526.  When the words in a statute are clear and unequivocal, we are "'required to assume the Legislature meant exactly what it said and apply the statute as written.'"  *In re Custody of Smith*, 137 Wn.2d 1, 8, 969 P.2d 21 (1998) (quoting *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997)), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

"Whenever possible, statutes are to be construed so 'no clause, sentence or word shall be superfluous, void, or insignificant.'"  *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (internal quotation marks omitted) (quoting *Kasper v. City of Edmonds*, 69

Wn.2d 799, 804, 420 P.2d 346 (1966)). We cannot read into a statute that which we may believe "'the legislature has omitted, be it an intentional or inadvertent omission.'" *Smith*, 137 Wn.2d at 12 (quoting *Auto. Drivers & Demonstrators Union Local 882 v. Dep't of Ret. Sys.*, 92 Wn.2d 415, 421, 598 P.2d 379 (1979)). Courts cannot amend statutes by judicial construction or rewrite statutes to avoid difficulty in construing and applying them. *C.A.M.A.*, 154 Wn.2d at 69.

"If the statute is 'susceptible to two or more reasonable interpretations,' it is ambiguous." *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 305, 268 P.3d 892 (2011) (quoting *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005)). But the "fact that two or more interpretations are conceivable does not render a statute ambiguous." *Five Corners Family Farmers*, 173 Wn.2d at 305. If a statute is ambiguous, we may look to relevant case law, the legislative history of the statute, and the circumstances surrounding its enactment to determine legislative intent. *Anthis v. Copland*, 173 Wn.2d 752, 756, 270 P.3d 574 (2012).

## B. CRA'S PLAIN MEANING

Ruff argues that the CRA's plain language and its statutory scheme illustrate that the CRA does not apply to joint parenting plans. We agree.

### 1. PLAIN LANGUAGE

Ruff argues that the CRA's definition, notice, and reason for relocation provisions show that the CRA does not apply to evaluate proposed relocations in the context of joint parenting plans where the child's residential time is spent equally with both parents. Ruff further argues that applying the CRA to a proposed relocation where there is a joint parenting plan would require the court to improperly read language into the statute that is not there. We agree.

Relocation is defined as "a change in *principal residence*." RCW 26.09.410(2) (emphasis added). And "a person with whom the child resides *a majority of the time*" must provide notification of the proposed relocation (change in principal residence). RCW 26.09.430 (emphasis added). Finally, there is "a rebuttable presumption that the intended relocation of the child will be permitted." RCW 26.09.520.

Under the plain language of the CRA's relocation definition and its notice provision, a relocation is a change in principal residence, and the person with whom the child resides the majority of time shall give notice of any intended change in principal residence. The CRA does not define "principal residence" or "majority." *See* RCW 26.09.410. In the absence of statutory definitions, we give these terms their "plain and ordinary meaning ascertained from a standard dictionary." *Watson*, 146 Wn.2d at 954. The ordinary meaning of "principal" is "most important" or "influential," and the ordinary meaning of "majority" is "a number greater than half of a total." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1802, 1363 (2002).

These definitions necessarily exclude joint parenting plans because there is no "most important or influential" or "principal" residence and there is no person with whom the child resides "greater than half" or the "majority of the time." RCW 26.09.410, .430, .520. To conclude otherwise would be to impermissibly render this language superfluous, void, or insignificant. And we avoid such results. *HomeStreet, Inc.*, 166 Wn.2d at 452.

Worthley argues that the definition statute could be read to mean that a child "has no principle [sic] place of residence or the child has two" and that the notice statute could be read to mean that "neither or both parents have a majority of parenting time." Br. of Resp't at 8.

Worthley's interpretation of these provisions requires reading into the CRA substantial language that the legislature has omitted. This we cannot do.

The definition of "relocate" would have to be read as "a change in principal *or equal* residence." The notice statute would need to be read as "a person with whom the child resides a majority *or an equal* time."[8] And as for the presumption it would need to be read to say, "There is a rebuttable presumption that the intended relocation of the child will be permitted, *unless the child resides equally with the parents*." We cannot read into a statute that which "'the legislature has omitted, be it an intentional or inadvertent omission.'" *Smith*, 137 Wn.2d at 12 (quoting *Auto Drivers & Demonstrators Union Local 882*, 92 Wn.2d at 421). A plain reading of the CRA's language supports the conclusion that the CRA does not apply to proposed relocations that would modify joint and equal residential time under a joint parenting plan to something other than joint and equal residential time.

2.      STATUTORY SCHEME

To further support her argument, Ruff argues that it is consistent with the CRA and its statutory scheme to require a parent to prove adequate cause under the modification statute when

---

[8] Worthley also argues that the word "majority" is ambiguous because "[e]ven in a pure 50/50 parenting plan . . . one parent will have the child the majority of the overnights in any given year." Br. of Resp't at 9. We disagree.

The parenting plan designation in place at the time of a proposed relocation is used to determine primary residential parenting status, and so actual residential circumstances do not negate the express intent of the residential designation set in a permanent parenting plan. *In re Marriage of Fahey*, 164 Wn. App. 42, 58-60, 262 P.3d 128 (2011); *In re Marriage of Kimpel*, 122 Wn. App. 729, 734, 94 P.3d 1022 (2004). Thus, we are to look to the parenting plan designation, not an actual number of overnights, to consider with whom the child resides a "majority" of time. In the context of that analytical framework, "majority" is not ambiguous with respect to whether the CRA applies to the joint parenting plan here because both parents are designated joint legal and physical custodians.

the proposed relocation will change the residential plan from joint residential time to one parent having less than equal residential time. We agree.

a.   POLICY CONSIDERATIONS

The CRA and the modification statutes are located within chapter 29.09 RCW, which governs dissolution proceedings and legal separations. The policy section for chapter 29.09 RCW states that the best interests of the child are served by parenting arrangements that best maintain a child's emotional growth, health, stability, and physical care. RCW 26.09.002.

And the best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm. RCW 26.09.002. Thus, the criteria for determining the best interests of the child in custody disputes are varied and highly dependent on the facts and circumstances, but continuity of established relationships is a key consideration. *See In re Parentage of L.B.*, 155 Wn.2d 679, 708-09, 122 P.3d 161 (2005); *see In re Parentage of C.M.F.*, 179 Wn.2d 411, 427, 314 P.3d 1109 (2013) (citing *In re Marriage of McDole,* 122 Wn.2d 604, 610, 859 P.2d 1239 (1993) (holding that custodial changes are viewed as highly disruptive to children and there is a strong presumption in favor of custodial continuity)).

b.   MODIFICATION REQUIREMENTS SERVE THE BEST INTERESTS OF THE CHILD

The best interest of the child is served by requiring that adequate cause and other requirements of the modification statute are met before making a change from an equal residential time designation to something other than equal residential time. Otherwise the preservation of the existing equal parent-child interaction could be disturbed for reasons other than those necessitated

by the parent's changed circumstances or as required to protect the child from harm. Such a result would be contrary to RCW 26.09.002.

Under the modification statute,

> the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

RCW 26.09.260(1). The trial court must consider whether a party has shown adequate cause for a modification, which can include a showing of whether the child has been integrated into the family of the petitioner in substantial deviation from the parenting plan or whether the child's present environment is detrimental. RCW 26.09.260(2)(b), (c).

The high burden of adequate cause fulfills the policy to maintain the existing pattern of the parent-child relationship to protect the best interest of the child. The modification procedures were set up specifically to "protect stability by making it more difficult to challenge the status quo." *C.M.F.*, 179 Wn.2d at 419-20. Parents who are parties to a joint parenting arrangement have entered into a serious commitment to parent their children together. This commitment should not lightly be undone. The modification statute protects the status quo in the parent-child relationship and that protection is no less important in the joint parenting context.

c.      FOCUS ON RELOCATING PARENT'S INTEREST IS INAPPROPRIATE

Ruff argues that *In re Marriage of Horner*, 151 Wn.2d 884, 93 P.3d 124 (2004), demonstrates that because the CRA focuses on the relocating parent's interests and not the best interest of the child, the CRA is not an appropriate framework for determining whether relocation should be granted in a joint parenting plan context. Ruff argues that the modification analysis

instead of the CRA analysis should be applied because the modification analysis focuses on the child's best interests. Ruff's arguments are persuasive.

The CRA focuses on the best interests of both the child and the relocating person. *Horner*, 151 Wn.2d at 887. The CRA requires analysis of 11 factors to determine if relocation should be granted. *Horner*, 151 Wn.2d at 887-88. And the factors are equally important because they are neither weighted nor listed in any particular order. RCW 26.09.520. Of these 11 factors, only 4 focus exclusively on the child's best interests. *Horner*, 151 Wn.2d at 894 n.9.

The *Horner* court reflected on the factors of the CRA:

[C]onsideration of all the factors is logical because they serve as a balancing test between many important and competing interests and circumstances involved in relocation matters. *Particularly important in this regard are the interests and circumstances of the relocating person.* Contrary to the trial court's repeated references to the best interests of the child, the standard for relocation decisions is not only the best interests of the child.

151 Wn.2d at 894 (emphasis added; footnote omitted). The *Horner* court explained that this analysis under the CRA was due to the incorporation of and substantial weight given to "'the traditional presumption that a fit parent will act in the best interests of [the] child.'" 151 Wn.2d at 895 (quoting *In re Custody of Osborne*, 119 Wn. App. 133, 144, 79 P.3d 465 (2003)). That the CRA incorporates and relies on this traditional presumption is well established in Washington. *See Osborne*, 119 Wn. App. at 144; *In re Marriage of Kim*, 179 Wn. App. 232, 243, 317 P.3d 555 (2014); *In re Marriage of McNaught*, 189 Wn. App. 545, 553, 359 P.3d 811 (2015), *review denied*, 185 Wn.2d 1005 (2016).

Thus, the rebuttable presumption is that a fit parent entrusted with the most time with a child will act in the child's best interest, and thus the relocation must also be in the child's best interest. But here, as Ruff argues, where there is a joint parenting plan, both parents are equally

10

entrusted to act in the child's best interests. Thus, the presumption that the relocation must be in the child's best interest is not appropriate to apply to a proposed relocation where a joint and equal residential designation exists because in those circumstances the court presumes both parents act in the child's best interests. Unlike the CRA, the modification statute does not emphasize one parent's best interests but focuses on the child's best interest. We conclude that the focus should be on the child's best interest when a proposed relocation would result in a modification of a joint residential time designation.

       d.      MODIFICATION REQUIREMENTS PROTECT BOTH PARENTS

Worthley argues that if a party cannot meet the adequate cause burden under the modification statute, the party would have to relocate without their child before being able to petition for a change to a parenting plan. Worthley contends that this requirement does not make sense because it results in different treatment for parents with a joint parenting plan versus differently situated parents under the same statutory scheme. But treating differently situated parties, differently, does make sense.

Requiring a parent to meet the adequate cause burden is appropriate when a parent seeks a relocation that would necessitate a change to the parenting plan designation from joint and equal parenting to something less than equal parenting time. The best interest of the child should be the guiding standard in that instance. A relocation that results in a change from joint and equal parenting to something else is a modification that should be subject to the modification adequate cause burden. On the other hand, dispensing with the adequate cause burden for the relocation of a parent who spends a majority of the time with the child makes sense because the relocation of this parent does not change the residential status quo. We therefore reject Worthley's contention.

Worthley also argues that the CRA's statutory scheme is violated if the CRA relocation evaluation factors do not apply to a relocation involving joint parenting plans. He concludes this is so because first, a relocating party would not be required to give advanced notice or seek to modify the parenting plan before relocating with the child. Second, the relocating parent could then relocate with the child if he or she could still comply with his or her obligations under the existing plan without consideration of any financial burden of the other parents' transportation costs. Third, RCW 26.09.450 would not apply so there would be no notice requirement. And finally, the nonrelocating parent would lose the protections found in the CRA and would have to file a petition to modify the parenting plan. We disagree

Contrary, to Worthley's claims, nonrelocating parents have rights under the modification statute as well as the CRA. Under the CRA, the nonrelocating parent can pursue sanctions or contempt against the other parent for failing to give notice of intent to relocate. RCW 26.09.470. Similarly, under the modification statute, if parents with a joint parenting plan have equal decision-making for education, the nonrelocating parent can pursue sanctions or contempt if the relocating parent removed a child from their school district. *See* RCW 26.09.160(1). Under the CRA or modification statutes, the nonrelocating parent can object to the relocating parent's decision by filing a petition for modification. RCW 26.09.480, .260. And under the CRA or the modification statute, a nonrelocating parent can pursue relief under a temporary order requiring the child to return. RCW 26.09.510(1), .270. Therefore, we reject Worthley's "parade of horribles" argument.

We are mindful that our task is to determine legislative intent, to give meaning to each word in the statute, and not to read omitted words into the statute. We conclude that the ordinary meaning of the CRA's language in the context of the CRA's statutory scheme is unambiguous.

Neither the CRA's plain language nor its statutory scheme support the CRA's application to a relocation that would modify a joint and equal parenting plan to something not joint or equal.

## C. AMBIGUITY

But even assuming the CRA's provisions are ambiguous, after reviewing case law and legislative history we still conclude that the CRA does not apply to a relocation that would result in a modification of a joint parenting plan to something other than joint and equal residential time.

### 1. FAHEY

Ruff argues that *In re Marriage of Fahey*, 164 Wn. App. 42, 262 P.3d 128 (2011), shows that the CRA does not apply to joint parenting plans. Worthley argues that *Fahey* does not control because its joint parenting plan comments are only dicta. Although not controlling, *Fahey* adds additional support to conclude that the CRA does not apply here.

In *Fahey*, the parenting plan designated the mother the primary parent with whom the children would reside a majority of the time. 164 Wn. App. at 46-47, 58-59. The mother sought to relocate, and the trial court applied the CRA presumption in favor of relocation to her after concluding that she was the primary residential parent. *Fahey*, 164 Wn. App. at 51. The father appealed and argued that the rebuttable presumption should not have applied to the mother because as a matter of fact, the children resided with him for the majority of the time for four years following the creation of the parenting plan. *Fahey*, 164 Wn. App. at 54-55. The father further argued that the trial court should have used the parenting plan modification statute, instead of the CRA. *Fahey*, 164 Wn. App. at 55.

We held that the father's argument was unpersuasive because the parenting plan in place at the time of a proposed relocation is used to determine primary residential parenting status, not

just the past circumstances of a parent's residential time. *Fahey*, 164 Wn. App. at 60. And there, the parenting plan explicitly designated the mother as the primary residential parent. *Fahey*, 164 Wn. App. at 58-59. We further stated that

> by the plain language of the [CRA], the notice requirements are triggered by the intended relocation of a person "with whom the child resides a majority of the time." RCW 26.09.430. *This plain language suggests that if neither parent qualifies as a parent with whom a child resides a majority of the time, for example when residential time is split 50/50, that neither parent can invoke the child relocation statute and receive the rebuttable presumption in his/her favor.* [The father's] arguments highlight the absence of statutory guidance in 50/50 residential time situations when he argues that the original parenting plan in this case intended that he and [the mother] share residential time equally. But [the father's] arguments are not persuasive because the original parenting plan designated [the mother] as the primary residential parent.

*Fahey*, 164 Wn. App. at 58-59 (emphasis added).

Thus, *Fahey* recognized that the CRA's plain language suggests that if neither parent qualifies as a parent with whom a child resides a majority of the time, then neither parent can invoke the child relocation statute and receive the rebuttable presumption in his/her favor. Even if dicta, our observation in *Fahey* lends support to the conclusion that the CRA does not apply to a proposed relocation that would modify a joint parenting plan to something other than joint and equal residential time.

2.    LEGISLATIVE HISTORY

Worthley argues that legislative history shows that the legislature intended the CRA to apply to proposed relocations even in the context of a joint parenting plan. We disagree.

If a statute is ambiguous, we may look to the statute's legislative history and the circumstances surrounding enactment to determine legislative intent. *Anthis*, 173 Wn.2d at 756. First, when the legislature enacted the CRA, it amended the modification statute, RCW 26.09.260, to add subsection (6), which permits a parent objecting to relocation to file a petition to modify the parenting plan:

> The court may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a relocation of the child. *The person objecting to the relocation* of the child or the relocating person's proposed revised residential schedule *may* file a petition to modify the parenting plan, including a change of the residence in which the child resides the majority of the time, *without a showing of adequate cause other than the proposed relocation itself. A hearing to determine adequate cause for modification shall not be required so long as the request for relocation of the child is being pursued.* In making a determination of a modification pursuant to relocation of the child, the court shall first determine whether to permit or restrain the relocation of the child using the procedures and standards provided in [the CRA]. Following that determination, the court shall determine what modification pursuant to relocation should be made, if any, to the parenting plan or custody order or visitation order.

RCW 26.09.260(6) (emphasis added).

Worthley very briefly argues that the plain language of the RCW 26.09.260(6) amendment places the onus of "filing a petition to modify the parenting plan on the party objecting to relocation," not the relocating party as Ruff advocates. Br. of Resp't at 15. And he points out that the legislature "removed" the adequate cause determination as well. Br. of Resp't at 15. But Worthley does not explain how these provisions show legislative intent to apply the CRA to joint parenting plans. We are not persuaded by these brief assertions.

Subsection (6) does not mention joint parenting plans, nor does it excuse a parent who is trying to relocate under a joint parenting plan from initiating a modification proceeding. As discussed above, there are important policy distinctions to shift the modification burden to the relocating parent when the relocation will change the existing joint and equal residential schedule to something other than joint or equal.

Next, Worthley argues that the CRA's sponsor made a clear statement of legislative intent that the CRA should apply to joint parenting plans. And Worthley emphasizes that the colloquy is the only substantive statement about the CRA clarifying the legislature's intent about the issue and that the legislature found it worth reporting in the official journal.

Worthley's argument is somewhat persuasive, but it is not determinative of the issue before us. A single legislator's remarks, even from the sponsor, are noteworthy but are not controlling of our analyses of legislative history or conclusive as to our interpretation of the plain language of a measure. *Wash. State Legislature v. Lowry*, 131 Wn.2d 309, 326-27, 931 P.2d 135 (1997).

When the legislature enacted the CRA, Representative Michael Carrell asked the bill's sponsor, Representative Dow Constantine, "[h]ow does this act apply in situations in which the child resides an equal amount of time with each parent?" 1 HOUSE JOURNAL, 56th Leg., Reg. Sess., at 551 (Wash. 2000). Representative Constantine replied, "Under such circumstances, the notice requirements apply to both parties and the presumption to neither."[9] 1 HOUSE JOURNAL, *supra*.

---

[9] The CRA notice statute provides that "*a person with whom the child resides a majority of the time*" must notify other persons entitled to residential time or visitation if the person intends to relocate. RCW 26.09.430 (emphasis added). And under the CRA there is a rebuttable presumption that the intended relocation of the child by a primary residential parent will be permitted. RCW 26.09.520.

But the CRA's language says the opposite. The language says the notice requirement applies to the parent who spends the majority of the time with the child and that the relocation is presumed to be permitted. RCW 26.09.430, .520. If the legislature intended the CRA's notice requirements to apply to both parents, under some circumstances, it could have easily said so. Similarly if the legislature intended the presumption to apply to neither parent, in some circumstances, it could have said so.

Representative Constantine's words reveal the bill's sponsor's intent for the CRA to apply in the joint parenting context and offers direction about *how* it could apply to joint parenting plans. But Worthley cites to no authority showing that such singularity or publication in the House Journal make the statement determinative of legislative intent. This sole remark does not persuade us to ignore legislative intent as found in the language of the statute and its statutory framework as discussed earlier.

## II. CONCLUSION

We hold that the CRA does not apply to a relocation that would necessarily modify a parenting plan from an existing joint and equal residential time designation to something other than joint and equal residential time. Instead, a parent whose desired relocation would necessarily

terminate the existing joint and equal residential schedule must show adequate cause under the modification statute.   We dismiss the relocation action.[10]

JOHANSON, J.

We concur:

WORSWICK, P.J.

SUTTON, J.

---

[10] We recognize our holding is contrary to the recommendation found in 20 Scott J. Horenstein, *Washington Practice:  Family and Community Property Law* § 33:37, at 350 (2d ed. 2015).