# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of<br>the Dependency of | No.  52928-9-II |
| T.P., | |
| A Minor child. | |
| D.P., | |
| Petitioner, | |
| v. | |
| DEPARTMENT OF CHILDREN, YOUTH,<br>AND FAMILIES, | PUBLISHED OPINION |
| Respondent. | |

CRUSER, J.  —  D.P. appeals a juvenile court order continuing a shelter care hearing to 22

days[1] after his daughter, T.P., was removed from her parents' home, arguing that this continuance

violated RCW 13.34.065(1)(a) and D.P.'s due process rights.

---

[1] RCW 13.34.065(1)(a) provides that the hearing must be held within 72 hours of the child's removal, *excluding* Saturdays, Sundays, and holidays.  Therefore, the amount of time that elapsed since T.P.'s removal, as measured in terms of the available dates according to the statute, was 14 days.

The Department of Children, Youth, and Families (Department) argues that this appeal is moot because agreed shelter care and dependency orders have since been entered and this court can no longer provide D.P. with effective relief. Accordingly, the Department argues that any error committed by the juvenile court in entering the continuance order was harmless as to the dependency proceeding.

We hold that although the appeal is moot, it is an issue of substantial and continuing public importance that, due to the timing of subsequent proceedings in dependency actions, will likely continue to evade review. We further hold that the juvenile court violated RCW 13.34.065(1)(a) when it failed to hold the shelter care hearing within 72 hours after the child was removed from her home. However, given that the parties have since entered into agreed shelter care and dependency orders, reversal is not required. Because this appeal is moot, we deny D.P.'s request to vacate the dependency order.[2]

FACTS

D.P., the petitioner, is father to T.P., a four-year-old girl. N.D. is T.P.'s mother. On December 11, 2018, the Department filed a dependency petition alleging that T.P. and her half-brother, A.C.,[3] were dependent children under RCW 13.34.030(6)(c) because they had "no parent, guardian or custodian capable of adequately caring for [them]." Clerk's Papers (CP) at 2. The petition described a history of domestic violence between D.P. and N.D. The petition also alleged that both parents have engaged in substance abuse and have struggled with mental health issues.

---

[2] Furthermore, even if this case was not moot, T.P. has failed to demonstrate that vacation of the dependency order is the appropriate remedy.

[3] A.C.'s case is not part of this appeal.

A juvenile court commissioner reviewed the Department's petition that same day and determined that T.P. was at risk of imminent harm due to unsafe conditions in the home and placed her in the Department's custody.

A shelter care hearing was set to occur two days later, on December 13. Both of T.P.'s parents appeared and were represented by the same counsel. A.C.'s father also appeared and was represented by separate counsel. At this hearing most, though not all, the requisite topics under RCW 13.34.065(4) were addressed by the juvenile court. T.P.'s parents requested appointed counsel, and the court granted the requests and appointed separate counsel. The juvenile court ascertained that T.P. was residing with relatives and it granted supervised visitation for both D.P. and N.D. The Department was concerned that T.P. may have been exposed to "something" and requested a hair follicle test, which the juvenile court granted. Verbatim Report of Proceedings (VRP) at 3. The juvenile court inquired as to whether T.P. may be an Indian child under RCW 13.38.040(1)(a) to determine whether the Washington State Indian Child Welfare Act, ch. 13.38 RCW, applied. The Department also requested, and the juvenile court appointed, a guardian ad litem.

Because the parents requested a contested hearing, the Department stated that "[w]e have been given the date of January 2nd" on which to hold the hearing. *Id.* at 2. Both parents objected and requested that the juvenile court "not wait until January to have this issue litigated." *Id.* at 5. Counsel for the parents stated that he "explained the normal court practice of setting out a few weeks, but they are requesting that this contested hearing happen today." *Id.*

Because A.C.'s biological father was being evaluated as a suitable placement for A.C., the Department requested that the court delay the shelter care hearing as to both children rather than

bifurcate the case. The court's earliest availability, the Department explained, was January 2. The juvenile court agreed that there would be no courtroom available before January 2, and so it ruled that the contested shelter care hearing would be continued until that date. Despite D.P.'s and N.D.'s objection at the hearing, the order granting the continuance states that "[a]ll parties agree" with the motion for a continuance. CP at 37.

The order granting the continuance also contained a checked box next to preprinted language which stated,

> It is currently contrary to the welfare of the child to remain in the child's home. The petition and/or supporting declarations and affidavits establish reasonable grounds to believe that the child is dependent and the child's health, safety, and welfare will be seriously endangered if not taken into custody.
> The petitioner has demonstrated that there is a risk of imminent harm to the child in the child's home. The assessment of risk by petitioner constitutes reasonable efforts to prevent or eliminate the need for removal of the child from the child's home.

*Id.* at 38. Neither D.P. nor N.D. had an opportunity to testify or present their own evidence during this hearing. In addition, beyond the allegations in the Department's petition, there was no discussion at the hearing regarding whether T.P. could be safely returned home while the dependency proceedings were adjudicated, there was no description of the services provided to the family to prevent or eliminate the need to remove T.P. from the home, and there was no consideration as to whether the Department's proposal would be the least disruptive and most family-like setting that would meet the child's needs.

On January 2, D.P. requested a continuance of the contested shelter care hearing because his attorney was not available. The hearing was continued to February 6, 2019. However, before the continued contested hearing took place, the parents agreed to a shelter care order on January

29 and waived their right to a contested shelter care hearing. They agreed that T.P. would remain in the Department's custody and would be placed with relatives during the pendency of the action.

The parties later held a settlement conference in which they agreed that T.P. was dependent, and although D.P. and N.D. did not agree to all the facts alleged in the dependency petition, they agreed that the recommended services were necessary and that they would comply with the Department's plan so that T.P. may safely return home. T.P. eventually did return home when the dependency order was amended to place her back in the parents' care. D.P. and N.D. were still required to comply with the conditions recommended by the social worker.

On January 7, 2019, prior to entry of any of the agreed orders, D.P. sought discretionary review of the December 13 order that continued the shelter care hearing to January 2. In the motion for discretionary review, D.P. argued that the juvenile court erred when it continued the shelter care hearing in violation of RCW 13.34.065(1)(a), and this act constituted probable error that substantially altered the status quo because resolution of T.P.'s appropriate shelter care placement was delayed by three weeks. Although D.P. agreed that the issue was mooted by the subsequent agreed shelter care order, D.P. asserted that our commissioner should grant review because the matter was of continuing and substantial public importance.

The Department countered that our commissioner should deny the motion for discretionary review because the issues are moot, and contrary to D.P.'s assertion that this court should accept review under the public interest exception, the issue presented is highly fact specific and its impact does not extend beyond the present litigation. The Department denied that the juvenile court committed any error because the hearing held two days after T.P. was removed from her home

was sufficient to constitute a shelter care hearing, although the court continued the matter to discuss the remaining contested issues on January 2.

Our commissioner granted D.P.'s motion for discretionary review, ruling that although the issue was moot, the case was of substantial and continuing public importance. In addition, our commissioner ruled that D.P. demonstrated that the juvenile court committed probable error when it continued the hearing beyond the 72-hour period mandated by RCW 13.34.065(1)(a).

## DISCUSSION

### I. THE ISSUE IS MOOT

When we can no longer provide effective relief, an appeal is moot. *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004). "As a general rule, this court will not review a moot case." *Id.*

In *In re Dependency of H.*, 71 Wn. App. 524, 531, 859 P.2d 1258 (1993), the trial court denied the parent due process and the right to present testimony during the shelter care hearing, but this court held that the appeal was moot and that reversal was not required "because dependency has been established by sufficient evidence." Here, the dependency was ultimately established by an agreed order. T.P. has since been placed back into her parents' care.

D.P. admits that the appeal is moot.[4] We agree. Because the matter has been resolved by agreed orders, there is no effective relief that we may provide for the trial court's error in continuing the shelter care hearing. Therefore, the appeal is moot.

---

[4] Despite admitting that the appeal is moot, D.P. continues to argue that he is entitled to relief via dismissal of the dependency petition and the child's return to the care of her parents. But an appeal is moot if the court can no longer provide effective relief, and D.P. fails to demonstrate that the relief he seeks would cure the error that occurred below. *See Horner*, 151 Wn.2d at 891.

## II. THE MOOT ISSUE SHOULD BE REVIEWED

If an issue presented is of continuing and substantial public importance, we may review an otherwise moot case. *Horner*, 151 Wn.2d at 891. To determine whether the contested issue is of substantial and continuing public importance, we consider whether "'(1) the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur.'" *Id.* at 892 (quoting *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994)). We may also consider the likelihood that the issue will continue to evade review due to the short-lived nature of the facts in controversy. *Id.*

D.P. maintains that we should review this case because the issue presented is of substantial and continuing public importance. He asserts that (1) removal of a child from his or her parents' care is a matter of public interest, (2) guidance to lower courts is desirable given the juvenile court's apparently systematic violation of RCW 13.34.065(1)(a), and (3) this issue is likely to recur but evade review.

We hold that this case may be reviewed under the public interest exception because (1) this issue is a matter of public interest, (2) guidance to lower courts is desirable, and (3) this issue is likely to recur but continually escape our review.

RCW 13.34.065(4) provides that in the context of shelter care hearings, the "paramount consideration for the court shall be the health, welfare, and safety of the child." The underlying goals in a dependency proceeding are to both protect children from harm and to help parents alleviate the problems that led to intervention so that the family may eventually become reunited. *In re Dependency of P.H.V.S.*, 186 Wn. App. 167, 181, 339 P.3d 225 (2015). Even where the

7

potential deprivation is only temporary, as in a shelter care hearing, contentions regarding procedural deficiencies "merit consideration in these circumstances where the State has removed the children from the home and thereby moved to weaken familial bonds." *In re Dependency of Chubb*, 46 Wn. App. 530, 533, 731 P.2d 537 (1987). Consequently, given the potential impact the procedural issues raised in this appeal may pose on familial relationships, the issue is a matter of public interest.

Providing guidance to lower courts is necessary in this case due to the juvenile court's apparent systematic continuance of shelter care hearings beyond the statutory time frame. At the December 13 hearing, counsel for the parents informed the court that he "explained the normal court practice of setting out a few weeks," but despite this normal practice, the parents still wished to have a contested shelter care hearing on that date. VRP at 5. This statement suggests that not only is it typical to hold contested shelter care hearings outside the time frame mandated by the statute but that the parents' request to hold a contested hearing within 72 hours was somehow exceptional.

Procedural deficiencies that occur at shelter care hearings will continually evade our review. We have previously reviewed a moot challenge to a shelter care proceeding, recognizing that there is a "short time between the initial sheltercare hearing, the 30-day hearing and the factfinding hearing." *H.*, 71 Wn. App. at 528. As a result, "[t]here is little or no possibility that the procedure followed at a sheltercare hearing can be reviewed by an appellate court before it is mooted by a subsequent hearing." *Id.* Although the issue is moot, we review this case because the issue raised is of substantial and continuing importance that is otherwise likely to evade review. *See Horner*, 151 Wn.2d at 892.

III. JUVENILE COURT ERROR

A. STATUTORY VIOLATION

D.P. asserts that the juvenile court violated the express mandate in RCW 13.34.065(1) that requires shelter care hearings to take place within 72 hours of the child's removal from her home. The Department concedes that the juvenile court did not hold a hearing within 72 hours of T.P.'s removal as required under RCW 13.34.065(1), but it maintains that any error that occurred as a result of this continuance was minimal and cured by subsequent proceedings.

We hold that the juvenile court violated RCW 13.34.065(1) when it continued the shelter care hearing to January 2, 2019, 22 days after T.P. was removed from her home. This error is not minimal because the 22 days of separation that occurred in this case constituted a substantial interference in the parent and child relationship.[5]

Because a shelter care hearing did not take place on December 13 but was instead continued to January 2 without a request by T.P.'s parents to continue the hearing, the juvenile court violated RCW 13.34.065(1) when it continued the hearing. RCW 13.34.065 provides in relevant part,

> (1)(a) When a child is taken into custody, the court *shall* hold a shelter care hearing within seventy-two hours, excluding Saturdays, Sundays, and holidays. The primary purpose of the shelter care hearing is to determine whether the child can be immediately and safely returned home while the adjudication of the dependency is pending.
> (b) Any parent, guardian, or legal custodian who for good cause is unable to attend the shelter care hearing may request that a subsequent shelter care hearing be scheduled. The request shall be made to the clerk of the court where the petition is filed prior to the initial shelter care hearing. Upon the request of the parent, the court shall schedule the hearing within seventy-two hours of the request, excluding Saturdays, Sundays, and holidays. The clerk shall notify all other parties of the hearing by any reasonable means.

---

[5] We do not decide the exact number of days that is considered "minimal." However, we do decide that under the facts of this case, 22 days is not minimal.

(Emphasis added.) The statute imposes a mandatory requirement on juvenile courts to hold a shelter care hearing within 72 hours of the child's removal, excluding weekends and holidays. "It is well settled that the word 'shall' in a statute is presumptively imperative and operates to create a duty, rather than to confer discretion." *In re Parental Rights to K.J.B.*, 187 Wn.2d 592, 601, 387 P.3d 1072 (2017). The court lacks the discretion to set the shelter care hearing beyond 72 hours of the child's removal. Rather, it has an express duty to hold a shelter care hearing within the statutory time frame. The hearing may be continued only when, for good cause, a parent is unable to attend the hearing, and even then, only on the parents' request. RCW 13.34.065(1)(b). When a parent makes such a request, the hearing must be scheduled within 72 hours. *Id*.

RCW 13.34.065(1) does not provide for other bases on which to grant a continuance. "'If a statute is clear on its face, its meaning is to be derived from the plain language of the statute alone.'" *In re Marriage of Worthley*, 198 Wn. App. 419, 424-25, 393 P.3d 859 (2017) (quoting *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)). RCW 13.34.065(1) is unambiguous in its direction to hold shelter care hearings within 72 hours of a child's removal unless a parent is unavailable. Here, all the parents involved were present during the December 13 hearing.

A juvenile court cannot contravene the parents' express wishes and continue the shelter care hearing for 22 days after the child's removal from her home due to court congestion or to allow the Department to investigate alternative placements. The fact that the parents subsequently entered into an agreed shelter care order does not minimize or otherwise dispel the trial court's statutory violation. Therefore, we hold that the juvenile court violated RCW 13.34.065(1) when,

in the absence of a request by T.P.'s parents, it continued the shelter care hearing to 22 days after T.P. was removed from her home.[6]

## CONCLUSION

We hold that the juvenile court violated RCW 13.34.065(1)(a) by continuing the shelter care hearing for 22 days after T.P. was taken into custody, despite not having been requested to do so by her parents, when the statute requires that such a hearing be held within 72 hours of a child's removal from her parents' care. We deny D.P.'s request to vacate the dependency order.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, A.C.J.

---

[6] Because this case can be resolved entirely on statutory grounds, we do not reach D.P.'s constitutional due process issue. *Holmes Harbor Sewer Dist. v. Holmes Harbor Home Bldg. LLC*, 155 Wn.2d 858, 862, 123 P.3d 823 (2005).