IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AMINA JANE CONDEL,<br><br>               Appellant,<br><br>          v.<br><br>FRANK GARRETT CONDEL,<br><br>               Respondent. | No. 86967-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BUI, J. — Amina Condel challenges the superior court's orders granting revision and vacating the renewal of the domestic violence protection order (DVPO) protecting her from her former husband. RCW 7.105.405(4) presumes renewal of a protection order unless the respondent makes two separate showings by a preponderance of the evidence. Because the superior court misapplied the law and relied on findings of fact that were not supported by substantial evidence to overcome the presumption in favor of renewing the DVPO, we reverse.

## FACTS

Amina and Frank "Garrett" Condel married in 1999 and have four children. Garrett[1] filed a petition for dissolution of their marriage in December 2021. In March 2022, Amina filed a petition for a DVPO for herself and three of their children who were minors. She alleged several incidents of abuse, including

---

[1] Because the parties share a last name, we refer to them by their first names to avoid confusion. We intend no disrespect.

violent acts against herself and the children. The court granted a temporary DVPO and set a hearing date for a permanent restraining order. The trial court linked, but did not consolidate, the DVPO and dissolution cases.

In May 2022, a commissioner entered a one-year DVPO protecting Amina and the three minor children with an order to surrender weapons. The DVPO ordered that Garrett "shall participate in treatment and counseling as follows: domestic violence perpetrator treatment program approved under RCW 26.50.150 or counseling at: state certified Domestic Violence Batterers Treatment Program" and "parenting classes at: state certified DV Dads Program." Garrett filed a motion for reconsideration of the DVPO, which the commissioner denied. Garrett then moved for revision. The superior court denied the request for revision, finding that Amina had met her burden to prove by a preponderance of the evidence that Garrett had perpetrated acts of domestic violence as alleged. Garrett appealed to this court.

The dissolution trial occurred in January 2023. On April 6, 2023, the court issued its findings of fact and conclusions of law about the marriage and entered orders dissolving the marriage, establishing the parenting plan, and setting child support. The court found that Garrett "has a history of domestic violence pursuant to [the DVPO case]." However, the court did not impose any RCW 26.09.191 restrictions on either Garrett's decision-making authority or residential time with the children. According to the trial court, "the instances alleged which resulted in the order were isolated events which, while found to be domestic violence by the prior court as defined by the statute, do not demonstrate a history

2

of domestic violence for the purposes of RCW 26.09.191." The court did not find Amina's allegations of domestic violence credible "specifically as it relates to the children." The court expressed concern about Amina's behavior and found that her behavior "is exposing the children to conflict and potentially damaging their relationship with their father in the process." The court made no RCW 26.09.191 findings against Amina but ordered mental health evaluation and treatment. While the court did not terminate the DVPO, it ordered modification to remove the children. Amina appealed the entry of the court's parenting plan to this court.[2]

After entry of the orders in the dissolution case, Amina filed a motion for renewal of the DVPO. A commissioner found that, while Garrett established by a preponderance of the evidence that he would not resume acts of domestic violence against the protected parties, he had not proven "that there ha[d] been a substantial change in circumstances as provided in RCW 7.105.405(5)" and renewed protection for Amina for one year. The commissioner complied with the dissolution court's order to modify the DVPO to remove the minor children and allow the parents to communicate information about the children. The commissioner did not modify the requirement that Garrett undergo domestic violence treatment.

Garrett moved for revision of the commissioner's decision, claiming that the "isolated" and "de minimis" incidents did not demonstrate a history of

---

[2] See Condel v. Condel, No. 85311-2-I, slip op. at 1 (Wash. Ct. App. Dec. 23, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/853112.pdf.
Pursuant to GR 14.1 we cite and discuss Condel v. Condel, No. 85311-2-I, as the procedural history of that case is directly related to the issues presented in this appeal.

domestic violence and that his adult children should be removed as protected parties. The court granted revision in part, affirming renewal of the DVPO but ordering the adult children removed as protected parties. The superior court stated that it "agrees with the Commissioner that the most relevant factor in assessing whether there has been a substantial change in the circumstances of this case is RCW 7.105.405(5)(e): whether Respondent has acknowledged responsibility or successfully completed certified treatment or counseling." The court noted, "[t]he domestic violence assessment along with Respondent's briefing and arguments indicate Respondent generally has not acknowledged responsibility," nor had Garrett completed treatment as ordered.

In July 2023, this court issued an opinion in Garrett's appeal, affirming the original entry of the DVPO. See Condel v. Condel, No. 84310-9-I, slip op. at 1 (Wash. Ct. App. July 31, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/843109.pdf. In the appeal, this court disagreed with Garrett's claim that the two incidents mentioned in the DVPO hearing did not constitute domestic violence as a matter of law. Condel, No. 84310-9-I, slip op. at 11. Additionally, this court determined that substantial evidence supported the DVPO court's findings that Garrett presented a credible threat to Amina and the children had been exposed to domestic violence. Condel, No. 84310-9-I, slip op. at 14-16. The opinion also notes that "the incidents alleged here are certainly not de minimis or isolated. Rather, the record demonstrates a history of domestic violence spanning several years." Condel, No. 84310-9-I, slip op. at 17-18. This court concluded that the DVPO court did not abuse its discretion in ordering Garrett to

participate in domestic violence intervention treatment. Condel, No. 84310-9-I, slip op. at 20. Finally, we awarded Amina attorney fees. Condel, No. 84310-9-I, slip op. at 22.

Amina petitioned for renewal of the DVPO in May 2024, requesting six years of protection. She stated that she continued to be afraid of Garrett, and Garrett could not prove a substantial change in circumstances as required to avoid renewal of the DVPO. Specifically, Garrett had not complied with the treatment requirements ordered by the earlier 2022 DVPO and had not shown any accountability for his acts of domestic violence.

In response, Garrett cited the dissolution court's findings that Amina was not credible and the instances of domestic violence were isolated events. Garrett also argued that he had completed a domestic violence (DV) assessment with William Singer, Ph.D. of Northwest Evaluation Center who opined that Garrett did not have abusive behaviors, concluded that domestic violence treatment was not recommended, and accordingly, assigned a treatment level of 0. Instead, Dr. Singer recommended Garrett "engage in 12 months of weekly individual therapy with a therapist of his choosing. There should be an element of parenting in that therapy as well as communication skills and anger management. He should also enroll in 24 hours of anger management classes."

As evidence of his compliance with treatment, Garrett provided a certificate of completion for an anger management class issued December 2022 and a letter from a licensed therapist stating that Garrett began therapy in October 2022. According to the therapist, "Garrett completed his 1 year of

individual therapy as recommended by Dr. William Singer in his DV assessment . . . . [and] has continued to voluntarily participate in his regularly scheduled therapy sessions since that date." Garrett also submitted an e-mail from the domestic violence treatment organization that conducts DV Dads sent in response to an inquiry from his attorney asking whether someone who was assessed at level 0 could enroll in the program. Garrett relied on this e-mail to argue "[h]e can't get involved in a DV perpetrator program with a Level 0. . . . [H]e can't be in their domestic violence treatment program or DV Dads program either."

At a hearing on May 24, 2024, a commissioner granted the six-year DVPO because Garrett had not acknowledged the harm he had caused to Amina. Additionally, the commissioner noted Garrett had failed to engage in DV Dads or the other treatment ordered. The order renewing the DVPO did not modify the requirement that Garrett participate in domestic violence treatment.

Garrett moved for revision of the commissioner's decision. He claimed that the commissioner erred by concluding he did not prove by a preponderance of the evidence that he would not resume acts of domestic violence and there had not been a substantial change in circumstances. He also asserted that the commissioner erred by finding he had not acknowledged responsibility for acts of domestic violence when he had immediately apologized to Amina after one incident and fully complied with the terms of the DVPO by completing anger management and counseling programs.

6

The superior court heard arguments from the parties on revision. Garrett argued that "the substantial change of circumstances that is contemplated by this statute is that the respondent will not resume acts of domestic violence." The superior court questioned Garrett's failure to engage in the court-ordered DV Dads treatment or move to modify the DVPO requirements based on Dr. Singer's assessment. As to Garrett's lack of accountability for his actions, the court noted that "an apology or an acknowledgement is really not particularly meaningful or helpful unless it's sincere."

In reaching its decision, the court determined that Garrett "made a good-faith effort to try to be in compliance to the strict letter of the protection order." The court found by a preponderance of the evidence that Garrett would not commit acts of domestic violence and "that he has demonstrated a substantial change of circumstances." Additionally, the court opined that when someone "has tried to, in good faith, undergo everything that was asked of him or directed of him, that there should be a situation where it is envisioned that he can move on from the protection order and not be required to remain on that indefinitely or permanently." The court entered written findings of fact that "there has been a substantial change of circumstances since the Domestic Violence Protection Order was entered on May 4, 2022, renewed on May 12, 2023, and extended on May 10, 2024 and that he will not resume acts of domestic violence against the petitioner or the parties' children when the order expires." The court concluded that the commissioner had erred by finding that Garrett had not satisfied his

7

burden and, therefore, granted revision, vacated the renewed DVPO, and entered an order denying renewal.

Amina appeals.

DISCUSSION

A court commissioner's decision is subject to revision by the superior court. RCW 2.24.050. On a motion to revise, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based on the issues and evidence presented to the commissioner. In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). The appellate court reviews the superior court's decision rather than that of the commissioner. Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017).

Standard for Renewal of a DVPO

Amina challenges the superior court's orders granting revision and reversing and vacating the 2024 renewal of the DVPO. She contends the court "[f]ailed to identify a substantial change and improperly collapsed the two-prong standard" as required to deny renewal of a DVPO. Additionally, she claims that any finding of a substantial change was not supported by the record. In response, Garrett argues the court's findings that he would not resume acts of domestic violence and that he obtained an assessment and completed the recommended therapy were supporting evidence of substantial change intended by RCW 7.105.405(4).

8

1.  Statutory Construction

The parties disagree as to the interpretation and application of RCW 7.105.405, which governs renewal of DVPOs. We consider statutory construction as a question of law reviewed de novo. In re Marriage of Watson, 132 Wn. App. 222, 230, 130 P.3d 915 (2006). "Our 'fundamental objective in determining what a statute means is to ascertain and carry out the legislature's intent.' " In re Dependency of W.W.S., 14 Wn. App. 2d 342, 358, 469 P.3d 1190 (2020) (quoting Durant v. State Farm Mut. Auto. Ins. Co., 191 Wn.2d 1, 8, 419 P.3d 400 (2018)). Statutory interpretation begins with the statute's plain meaning, discerned from the ordinary meaning of the language at issue, the context of the statute, related provisions, and the statutory scheme as a whole. In re Marriage of Ruff and Worthley, 198 Wn. App. 419, 424, 393 P.3d 859 (2017). If the statute is clear on its face, we derive its meaning from the plain language alone and our inquiry ends. Ruff, 198 Wn. App. at 424-25.

RCW 7.105.405 governs the renewal of protection orders, including DVPOs. When petitioning for renewal, "[t]he petitioner bears no burden in proving that he or she has a current reasonable fear of harm by the respondent." RCW 7.105.405(3). The statute favors renewal, placing the burden of proof on the respondent rather than the petitioner:

> (4) The court shall grant the motion for renewal unless the respondent proves by a preponderance of the evidence that there has been a substantial change in circumstances and the following:
>
> (a) For a domestic violence protection order, that the respondent proves that the respondent will not resume acts of domestic violence against the petitioner. . . .

RCW 7.105.405; see Prussak v. Prussak, 27 Wn. App. 2d 451, 460, 536 P.3d 199 (2023).

Amina argues that to deny renewal of a DVPO the court must make two separate findings: (1) a substantial change in circumstances and (2) that the respondent will not resume acts of domestic violence. The plain language of the statute supports this interpretation. For all types of protection orders, RCW 7.105.405(4) requires the court to find that the respondent has proven by a preponderance of the evidence that there has been a change in circumstances. In addition to the change in circumstances, the respondent must also prove an additional element relevant to the type of protection order at issue. RCW 7.105.405(4)(a)-(e). For example, for a non-renewal of a stalking protection order, the respondent must prove the additional element that they will not resume acts of stalking against the petitioner or family and household members. RCW 7.105.405(4)(c). Similarly, for non-renewal of a sexual assault protection order, the respondent must prove that they will not engage or attempt to engage in physical or nonphysical contact with the petition. RCW 7.105.405(4)(b). To defeat renewal of any protection order requires proof of the common element of a "substantial change in circumstances" and a separate element relevant to type of protection order at issue. In the case of a DVPO, the respondent must prove both "that there has been a substantial change in circumstances and that they will not resume acts of domestic violence when the order expires." Prussak, 27 Wn. App. 2d at 458.

Here, the superior court found that Garrett had proven by a preponderance of the evidence, "a substantial change of circumstances . . . that he will not resume acts of domestic violence against the petitioner or the parties' children when the order expires." Based on this statement, the court relied on the finding that Garrett would not resume acts of domestic violence as a substantial change in circumstances. By merging the two required findings, the superior court's denial of the DVPO renewal was based on an erroneous interpretation of the statute. The court misapplied the law and, therefore, abused its discretion.

2. Evidence of a Substantial Change in Circumstances

As an alternative argument to his claim that the court properly relied on the finding that he would not resume acts of domestic violence as a substantial change in circumstances, Garrett asserts that the court made other findings that satisfy the requirements of RCW 7.105.405(4)(a). Specifically, Garrett argues that Dr. Singer's evaluation and his compliance with the recommended treatment, that he had not engaged in new acts of domestic violence, and the findings by the dissolution court all demonstrate the necessary substantial change in circumstances. Amina argues that the superior court's finding of substantial change in circumstances is not supported by substantial evidence. According to Amina, the record shows that Garrett had not completed the treatment ordered in the initial DVPO, the court cannot properly consider that Garrett committed no new acts of violence as a change in circumstances, and the dissolution court's findings are not relevant for the purpose of the DVPO.

The appellate court reviews a superior court's findings of fact for substantial evidence. Davis v. Arledge, 27 Wn. App. 2d 55, 64, 531 P.3d 792 (2023). Substantial evidence is sufficient to persuade a fair-minded, rational person of the truth of the declared premise. Davis, 27 Wn. App. 2d at 64.

RCW 7.105.405(6) sets forth a list of reasons that the court may not consider to deny a motion to renew a protection order. Among the listed reason is the passage of time since the last incident of conduct giving rise to the DVPO or evidence that the respondent has not violated the protection order. RCW 7.105.405(6)(f). Therefore, the fact that Garrett had not engaged in new acts of domestic violence cannot satisfy his burden of proving a substantial change in circumstances. Any reliance on this evidence by the trial court was an abuse of discretion.

In addition to the prohibited factors, the statute allows the court to consider several unweighted factors to assess whether a respondent has proven a substantial change in circumstances. RCW 7.105.405(5); Prussak, 27 Wn. App. 2d at 458. Pertinent here, the court may consider "[w]hether the respondent has either: Acknowledged responsibility for acts of . . . domestic violence . . . or successfully completed state-certified perpetrator treatment or counseling since the protection order was entered." RCW 7.105.405(5)(e). The superior court focused on Garrett's successful completion of therapy as recommended by Dr. Singer:

> Mr. Condel was determined to be Level 0. He engaged in the type of counseling that was recommended. He could not -- and I'm satisfied that through no fault of his own, he was unable to enter

12

into the DV Dads program originally ordered under the protection order. While I appreciate that the individual counseling that he did undergo at Dr. Singer's recommendation did have a parenting component and it certainly went beyond the typical parenting course that parents have to go through, it at least, to me, satisfies the Court that he made a good-faith effort to try to be in compliance to the strict letter of the protection order.

Essentially, the superior court determined Garrett substantially complied with the treatment ordered in the DVPO, and Garrett claims this satisfies the burden of proving a substantial change in circumstances by a preponderance of the evidence.

However, Dr. Singer's assessment has significant flaws that do not support the superior court's finding of substantial compliance with treatment. Dr. Singer based his assessment mainly on Garrett's self-reporting, noting "Mr. Condel denies all DV." In assigning Garrett a domestic violence treatment level of 0, Dr. Singer stated, "[t]here is no substantial documentation that any DV was engaged in. The police were called on a couple of occasions but no arrests or charges stemmed from those calls."

Reliance on a lack of arrests or charges is specifically against the domestic violence treatment and assessment standards established in the Washington Administrative Code. "The recommended level of treatment must not be diminished by factors such as the absence of legal charges . . . ." WAC 388-60B-0400(19)(f)(i). Additionally, "[t]he program must recommend a level of domestic violence intervention treatment when intimate partner violence has occurred, unless the program has documented a reasonable and valid rationale for a recommendation of an alternative service or no treatment at all in the

13

assessment." WAC 388-60B-0400(19)(f)(ii). Here, the only reason cited for assessment of level 0 is the lack of legal charges or arrests. This is not a "reasonable and valid rationale" for recommending individualized therapy rather than domestic violence treatment.

Dr. Singer's assessment also includes an explicit limitation: "[t]his assessment report should not be used for family, civil or criminal court unless specific to the scope of this assessment. This agency defers to the court or referring agency for the final decision of whether or not treatment is mandated." In this case, the DVPO court found that domestic violence had occurred and ordered specific treatment. Based on the language of the assessment itself, Dr. Singer's recommendation of individual therapy cannot supersede the court's order mandating specific domestic violence treatment. Garrett's completion of the therapy recommended by Dr. Singer does not amount to substantial compliance with the treatment ordered in the DVPO.

Moreover, Garrett's claim he is unable to participate in DV Dads fails to demonstrate substantial compliance. Garrett's attorney sent an e-mail to the agency that provides the DV Dads program to inquire whether someone assessed at level 0 could enroll in a domestic violence treatment program and whether his client could enroll in DV Dads without first completing a domestic violence treatment program. The agency responded, "[s]omeone who has been assessed at a zero could potentially be someone who would not benefit from this type of intervention—it could also mean several other things, but that is the simplest one." As for treatment, the organization would not accept outside

14

assessments and clients were required to have completed the primary domestic violence treatment program with the organization to be considered for enrollment in DV Dads.

The DV Dads program did not deny Garrett access because he was assessed at level 0. According to the agency, a level 0 assessment does not conclusively establish that domestic violence intervention would provide no benefit. Nor was the level 0 assessment the disqualifying factor for the DV Dads program. Rather, the agency would not allow Garrett to participate in DV Dads because he had not been assessed by the agency and had not participated in the prerequisite program. Garrett's claim that his level 0 assessment prevented him from engaging in DV Dads was a self-serving misrepresentation and fails to provide substantial evidence for the superior court's finding that he was unable to enroll in DV Dads through no fault of his own. The record does not support the superior court's finding that Garrett substantially complied with the treatment ordered in the DVPO.

Finally, Garrett's claim that the dissolution court's findings that Amina was not credible and the acts of domestic violence were de minimis cannot establish a substantial change in circumstances for RCW 7.105.405(4). The dissolution court found that the events "d[id] not demonstrate a history of domestic violence for the purposes of RCW 26.09.191." The dissolution court made these findings in the context of RCW 26.09.191, considering the best interest of the children for the parenting plan. The court acknowledged that the DVPO court had found domestic violence as defined by statute and declined to terminate the DVPO.

The dissolution court's findings are not relevant for the purposes of the DVPO proceeding under RCW 7.105.405 and do not provide substantial evidence of a substantial change in circumstances.

The court granted revision based on findings of fact that were not supported by substantial evidence and misapplication of RCW 7.105.405(4). Therefore, the court abused its discretion in granting revision, vacating the renewal of the DVPO, and entering the order denying the DVPO. We reverse the trial court and order the trial court to vacate its order granting revision and to reinstate the commissioner's order renewing the DVPO entered on May 24, 2024.

Fees on Appeal

Amina requests fees on appeal under RAP 18.1(a) and RCW 7.105.310(1)(j). RAP 18.1 allows a party to request attorney fees on appeal if applicable law grants that right. In re Domestic Violence Protection Order for Timaeus, 34 Wn. App. 2d 670, 685, 574 P.3d 127 (2025). "An appellate court may award attorney fees where allowed by statute, rule, or contract." Aiken v. Aiken, 187 Wn.2d 491, 506, 387 P.3d 680 (2017). Under RCW 7.105.310(1)(j), the court has discretion to "[r]equire the respondent to pay the administrative court costs and service fees . . . and to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." We exercise our discretion to award Amina her reasonable fees and costs for bringing this appeal, subject to her compliance with the requirements of RAP 18.1(d).

Reversed and remanded for further proceedings.

WE CONCUR:

_____
Bui, J.

_____
Chung, J.

_____
Mann, J.

17